Howard OWEN, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, et al.,
Respondents-Appellees.

Terry Wayne BARNHILL,
Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, et al.,
Respondents-Appellees.

Harold OWEN, Petitioner-Appellant,

v.

Louie L. WAINWRIGHT, et al.,
Respondents-Appellees.

No. 85–3661.

United States Court of Appeals,
Eleventh Circuit.

Dec. 31, 1986.

---

Steven Seliger (Court appointed), Quincy, Fla., for petitioner-appellant.

Kurt L. Barch, Asst. Atty. Gen., Tallahassee, Fla., for respondents-appellees.

Before KRAVITCH and CLARK, Circuit Judges, and HENDERSON, Senior Circuit Judge.

PER CURIAM:

The petitioner-appellants, Howard Owen, Harold Owen and Terry Wayne Barnhill pled nolo contendere in the Florida Circuit Court to the charge of trafficking in cannabis in violation of Fla.Stat. § 893.135(1)(a) (1981). After exhausting their state remedies, the appellants filed a pro se petition for writ of habeas corpus in the United States District Court for the Middle District of Florida. Subsequently, their petition was transferred to the Northern District of Florida which denied the application. They then lodged this appeal alleging that the district court erred in denying them an evidentiary hearing in federal court on their claims that 1) the government's outrageous conduct violated their due process rights under the fifth and fourteenth amendments, and 2) the selective and discriminatory enforcement of drug trafficking laws by law enforcement officers in Bay County violated the Equal Protection Clause. Because the petitioners have not met their burden of alleging facts which, if proved, would establish the right to habeas relief, we affirm the district court's dismissal of the habeas corpus petition without an evidentiary hearing.

The issues in this case arose out of a "reverse sting" operation conducted by the Bay County Sheriff's Department. During such an undertaking, the police pose as sellers of previously confiscated drugs, set up deals with would-be buyers under carefully controlled conditions, and arrest the purchasers following the sham sale. In 1981, when the Bay County Sheriff's Department began this type of undercover investigation, Deputy Sheriff Allen Johnson asked informant James Keith to notify him of anyone wanting to purchase a large quantity of drugs. Department policy dictated that reverse sting ventures would be developed only for sales of marijuana in excess of fifty pounds. The record indicates that Deputy Johnson volunteered the possibility of a percentage payment to the informant based upon the amount of money confiscated by the officers in any subsequent arrest resulting from his assistance. The financial arrangements, however, remained tentative at this juncture.

Six months following this initial conversation, Keith contacted Deputy Johnson with news that the appellants, previously unknown to Johnson, were interested in purchasing two hundred pounds of marijuana and a quantity of dilaudid. As before, the informant did not question Johnson about compensation. Johnson contacted the sheriff to make the necessary arrangements to obtain the drugs and to discuss Keith's payment. The sheriff agreed to pay the informant a "flat fee" of $5,000.00. According to Deputy Johnson, Keith would have received this sum regardless of the amount of money seized from the appellants.

Two days later, the informant arranged the meeting between the appellants and the police officials where the Bay County Sheriff's Department apprehended the appellants during the course of the drug sale. This operation was the second reverse sting effected by the Sheriff's Department.

Following arraignment, the appellants filed motions to dismiss the information on grounds of outrageous government conduct and selective prosecution. They requested an evidentiary hearing on the motions. On December 27, 1982, the state trial judge held a hearing in his chambers. After considering the arguments and legal memoranda of counsel as well as portions of the depositions of Deputy Johnson and another law enforcement officer, the Judge denied the motions to dismiss the information and the motion for an evidentiary hearing concluding that there was not a contingency fee arrangement between the Bay County Sheriff's Department and the informant. Later that day, the appellants pled nolo contendere to the charge of trafficking in cannabis pursuant to a plea bargain in which they specifically preserved the right to appeal the motions to dismiss the information. The Florida District Court of Appeal affirmed the trial court's judgment denying the motions without an evidentiary hearing. The petitioners then filed this pro se federal habeas corpus petition. The United States District Court for the Northern District of Florida dismissed the petition without holding an evidentiary hearing.

■ Before us, the appellants claim that it was error for the district court not to conduct an evidentiary hearing on the issues raised in their petition. The burden is on the petitioner in a habeas corpus proceeding to establish the need for such a hearing. *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir.) (en banc), *cert. denied*, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161 (1984). The threshold inquiry in making that determination is whether the petitioners' allegations, if proved, would establish the right to habeas corpus relief. *Townsend v. Sain*, 372 U.S. 293, 307, 83 S.Ct. 745, 754, 9 L.Ed.2d 770 (1963).

Accordingly, we must first examine the petition in an effort to ascertain whether the appellants have alleged sufficient facts to establish a constitutional violation.

■ The appellants first contend that the degree of the informant's participation in the criminal activity culminating in their arrest violates due process. The Supreme Court and our precedents have recognized the possibility that a conviction may be overturned where government involvement in criminal schemes is so extensive that it may be characterized as "outrageous," *United States v. Russell*, 411 U.S. 423, 431–32, 93 S.Ct. 1637, 1642–43, 36 L.Ed.2d 366 (1973); *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Gray*, 626 F.2d 494 (5th Cir.1980), *cert. denied*, 449 U.S. 1091, 101 S.Ct. 887, 66 L.Ed.2d 820 (1981); *United States v. Gianni*, 678 F.2d 956 (11th Cir.1982). In reviewing charges that official conduct rose to a constitutionally impermissible level, the cases turn on the totality of the circumstances without any single controlling factor. *United States v. Tobias*, 662 F.2d 381, 387 (5th Cir.Unit B), *cert. denied*, 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982). Government involvement in criminal schemes is constitutionally impermissible only where it violates " 'fundamental fairness, shocking to the universal cause of justice,' " *United States v. Russell*, 411 U.S. at 432, 93 S.Ct.

at 1643 (quoting *Kinsella v. United States ex rel. Singleton,* 361 U.S. 234, 246, 80 S.Ct. 297, 303, 4 L.Ed.2d 268 (1960)). Extreme circumstances of outrageous government conduct must be shown before a court will find a due process violation. We have held that government infiltration of criminal activity is a legitimate and permissible means of investigation and frequently requires that the government agent furnish something of value to the criminal. *United States v. Puett,* 735 F.2d 1331, 1335 (11th Cir.1984). Moreover, challenges to the "reverse sting" method of police investigation have been rejected by this court on numerous occasions. *United States v. Savage,* 701 F.2d 867, 869–70 (11th Cir. 1983); *United States v. Gianni* at 960; *United States v. Nicoll,* 664 F.2d 1308, 1314–15 (5th Cir.Unit B 1981), *cert. denied,* 457 U.S. 1118, 102 S.Ct. 2929, 73 L.Ed.2d 1330 (1982), *rev'd on other grounds, United States v. Henry,* 749 F.2d 203 (5th Cir. 1984).

Measured against this standard, the government participation alleged here falls far short of the extremely outrageous and shocking conduct necessary to establish a due process violation. The appellants assert that the informant obtained their participation in the illegal activity through persistent lucrative offers, despite their initial refusals to become involved, in order to collect a contingency fee from the Sheriff's Department based on a percentage of the funds confiscated in the operation. The informant continued to provide assistance to the appellants in the preparation of the deal. Under the totality of the circumstances, the appellants claim that the informant's initiation and furtherance of the drug buy coupled with his contingent fee established an impermissible degree of police involvement in the illegal activity for which they were convicted.

Essentially the same allegations were found insufficient to establish a due process violation in *United States v. Mulherin,* 710 F.2d 731, 735 (11th Cir.1983). In *Mulherin,* the defendants asserted an outrageous government conduct defense based on the fact that an acquaintance, working undercover for the government, seduced them into participating in a guns-for-drugs deal in order to collect reward money. The confidential informant provided support in furtherance of the crime and had a financial stake in netting as many people in the sting as possible. *Id.* at 736. The panel noted that while the informant suggested the criminal activity to the defendants and continued to advise them on completing the transaction, the defendants themselves took a significant role in obtaining the necessary supplies. *Id.* Similarly, the Owens and Barnhill controlled this illegal deal receiving only minor help from the informant. The appellants arranged nearly all the financing for the drug buy, met with the deputies to inspect the drugs, purchased and took possession of the contraband. Under the totality of the circumstances, the informant's minimal role in setting up the transaction is not sufficient to establish a due process violation in light of the substantial contribution to the criminal activity made by the appellants. *United States v. Tobias,* 662 F.2d 381 (11th Cir.1981).

The allegation that the amount of the informant's fee depended upon the sum of money subject to forfeiture by the appellants in the operation does not alter this conclusion. Contingent fee arrangements with informants have been upheld in this circuit where the fee is contingent on a successful investigation in general rather than the successful prosecution of a particular individual, *United States v. Sanchez,* 790 F.2d 1561 (11th Cir.1986); *see also, Williamson v. United States,* 311 F.2d 441 (5th Cir.1962); *United States v. Joseph,* 533 F.2d 282 (5th Cir.1976), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1698, 52 L.Ed.2d 389 (1977). Although the appellants do not assert that the police department set out to convict them in particular, they do attempt to allege that the informant's fee depended on their conviction and subsequent forfeiture of the funds seized in the sting.

Since the appellants' nolo contendere plea eliminated any danger that the infor-

mant may have perjured himself or fabricated evidence to obtain their conviction, it may be that the appellants' claim is irrelevant. *See generally United States v. Beard,* 761 F.2d 1477, 1480–81 (11th Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 239, 88 L.Ed.2d 240 (1985). We need not decide that issue, however, because the appellants failed to allege facts sufficient to establish an impermissible fee arrangement.

The only evidence offered by the appellants to be presented at an evidentiary hearing consisted of a statement, made by one of the deputies, that had the informant's testimony been necessary, the department would have seen to it that he was present. This inconclusive statement does not establish that the informant's fee depended on the appellants' conviction. No other evidence is proffered in support of this contention.

The allegations made by the appellants in their habeas corpus petition concerning the fee arrangement and the involvement of the informant in the criminal enterprise, even if proved, do not exceed accepted standards of police conduct. Thus, the appellants are not entitled to an evidentiary hearing on the issue of outrageous government conduct. *Ross v. Hopper,* 716 F.2d 1528, 1538 (11th Cir.1983).

▪ The appellants next urge that the district court erred in dismissing their habeas corpus petition without holding an evidentiary hearing on their claim of selective or discriminatory prosecution. In order to prevail in a defense of selective prosecution, a defendant must meet two requirements which we have described as a "heavy burden." *United States v. Johnson,* 577 F.2d 1304, 1308 (5th Cir.1978) (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2d Cir.1974)). First, he must make a prima facie showing that he has been singled out for prosecution although others similarly situated who have committed the same acts have not been prosecuted. *United States v. Tibbetts,* 646 F.2d 193, 195 (5th Cir. Unit A May 1981). Second, having satisfied the initial burden, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious. *Id.* The invidiousness requirement is met if the defendant establishes that the government's selective prosecution is motivated by constitutionally impermissible motives such as racial or religious discrimination or his exercise of constitutional rights. *United States v. Lichenstein,* 610 F.2d 1272, 1281 (5th Cir.), *cert. denied,* 447 U.S. 907, 100 S.Ct. 2991, 64 L.Ed.2d 856 (1980).

▪ A defendant, however, is not automatically entitled to an evidentiary hearing to make the required showing. Rather, such a hearing need be held only where a defendant presents facts sufficient to raise a reasonable doubt about the prosecutor's motive. *United States v. Ream,* 491 F.2d 1243, 1246 (5th Cir.1974). It is clear in the present case that the petitioners did not offer such facts to the district court. The appellants claimed that their prosecution was selective because the Sheriff's Department policy dictated that reverse sting operations be conducted only for purchases in excess of fifty pounds of marijuana. This policy, according to the appellants, evidences the real purpose of the reverse sting ploy which is not to apprehend criminals but to realize money for the Sheriff's Department from the forfeiture of the drug funds, an arbitrary and therefore unconstitutional exercise of the prosecutorial power.

▪ The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. *Oyler v. Boyles,* 368 U.S. 448, 450, 82 S.Ct. 501, 502, 7 L.Ed.2d 446 (1962). The fact that law enforcement officials devote their limited resources to catch those persons dealing in large quantities of drugs demonstrates nothing more than a legitimate interest in attacking drug distribution networks at their source. *See United States v. Johnson,* 577 F.2d 1304, 1309 (5th Cir.1978) (prosecution of vocal tax protesters demonstrates legitimate interest in punishing flagrant violators and deterring violations by others). *Accord, United States v. Vance,* 730 F.2d 736, 738 (11th Cir.1984). Further-

more, the fact that the Sheriff's Department declines to use the rather complicated and potentially dangerous reverse sting operation to apprehend small-time buyers does not automatically lead to the conclusion that the department is not vigorously pursuing these offenders through other simpler yet effective law enforcement techniques. Therefore, the appellants fail to assert a colorable claim of selective or discriminatory prosecution.

 Likewise, we find no merit in the appellants' claim that they were selectively prosecuted because of their "expeditious action in consulting with counsel" and the publicity surrounding the case. In their petition, the appellants allege that the targets of the only previous reverse sting operation conducted by the Bay County Sheriff's Department were charged with a misdemeanor while the appellants, due to press coverage and consultation with an attorney, faced felony charges. There is no attempt to argue that others similarly situated who committed the same acts were not prosecuted. Rather, the appellants assert only that the previous offenders negotiated a more favorable plea agreement. Assuming, arguendo, that disproportionate plea bargains can raise the selective prosecution defense, the record is replete with factors justifying firm treatment in this instance. The evidence indicates that the appellants sought to purchase the considerable amount of two hundred pounds of marijuana and a quantity of another controlled substance, dilaudid. Other aggravating circumstances include the possession of a firearm by one of the petitioners during the encounter with the deputies. Furthermore, following the sale, the appellants fled, hotly pursued by law enforcement officials in a high speed car chase. In return for the nolo contendere plea to the trafficking charge, the prosecutor dropped three other felony counts against the appellants resulting from these dangerous activities. There is no allegation in the habeas corpus petition that the severity of the prior offenders' crimes approached the magnitude or recklessness of the appellants' conduct here. Therefore, upon an examination of the record, we are unable to conclude that the appellants have presented facts sufficient to satisfy the first prong of the selective prosecution defense. Therefore, we need not consider whether the second requirement is met. *United States v. Johnson*, 577 F.2d at 1309. *United States v. Pleasant*, 730 F.2d 657, 663 (11th Cir.) *cert. denied*, 469 U.S. 869, 105 S.Ct. 216, 83 L.Ed.2d 146 (1984).

The appellants have failed to carry their burden of proffering facts sufficient, if proved, to make out a constitutional violation. The judgment of the district court dismissing the habeas corpus petition is therefore

AFFIRMED.