582 A.2d 1067

**COMMONWEALTH of Pennsylvania**

v.

**Louis R. BENCHINO, Appellant.**

Superior Court of Pennsylvania.

Argued March 8, 1990.

Filed Oct. 25, 1990.

Reargument Denied Dec. 21, 1990.

522

Peter T. Campana, Williamsport, for appellant.

Robert W. Ferrell, III, Asst. Dist. Atty., Williamsport, for Com., appellee.

Before WIEAND, TAMILIA and POPOVICH, JJ.

WIEAND, Judge:

In this appeal from a judgment of sentence [1] imposed following a bench trial in which Louis R. Benchino was found guilty of possession of cocaine with intent to deliver, he contends that police conduct was so outrageous as to constitute a violation of due process and that he was entrapped as a matter of law. After careful review, we reject these arguments and affirm the judgment of sentence.

The facts upon which appellant was convicted were stated succinctly in the opinion of the learned trial judge as follows:

Evidence at trial showed that the defendant had been a heavy user of drugs, including cocaine, and during his period of heaviest use, had met a dealer named Tomas

---

[1] Benchino was sentenced to pay a fine of one thousand ($1,000.00) dollars and undergo imprisonment for not less than eight (8) months nor more than twenty-three (23) months.

Dasso who has since been arrested and is cooperating with the Commonwealth. The defendant knew Dasso as a South American who was heavily involved in importing drugs, including cocaine. The defendant had not seen Dasso for more than a year and claims to have been attempting to extricate himself from involvement in the use of and dealing in drugs. According to the testimony of Agent Joseph Byerly of the Attorney General's Office, Dasso had mentioned the defendant as a potential target for investigation. Dasso had contacted the defendant and indicated that he wanted a large debt repaid to him, stating that the people behind him were concerned about it. The debt related to drug transactions which had occurred more than a year before. The defendant discussed with Dasso the possibility of purchasing between two and four ounces of cocaine, perhaps more, which he would resell in order to repay the debt. Dasso and the defendant agreed that a third party (Joseph Byerly, an undercover narcotics agent) would deliver the cocaine to the defendant.

When Agent Byerly met with the defendant, the defendant indicated that he and Dasso had done business in the past. The agent advised Benchino that the price was $50.00 for a gram or $1400.00 for [an] ounce[ ] of cocaine. The defendant asked Byerly to "front" him two ounces of cocaine because he did not have enough money to cover the purchase. He asked for an hour in which to obtain the money, and Agent Byerly agreed. After an hour, the defendant returned and asked Agent Byerly if he would accept $500.00 as partial payment for the two ounces, and defendant would pay the full amount later. Agent Byerly refused and asked the defendant to leave the $500.00 as good faith money that he would return later to take delivery of the cocaine. The defendant rejected Agent Byerly's request, and the two agreed that they would meet later, when the defendant would [purchase] between two and four ounces of cocaine.

Several days later, the defendant and Agent Byerly met again. At that time, the defendant offered the Agent $1400.00 for [an] ounce of cocaine and [an] additional ounce[ ] [was] fronted. The transaction occurred and the Agent immediately thereafter placed the defendant under arrest. Also arrested nearby was a co-defendant who had advanced the money to Benchino.

Instantly, appellant based his claim of a due process violation on an assertion that he had been implicitly threatened by efforts of the Commonwealth's informant to collect a drug debt which he had owed to the informant. According to appellant, it had been his fear of Dasso, the informant, which had caused him to pretend to go along with the scheme merely to avoid retaliation for not being able to pay the debt. Appellant argues further that the discussions about his obtaining cocaine, along with Agent Byerly's allowing him to sample a small amount of cocaine at their first meeting, had rejuvenated his desire to use the drug. From this appellant postulates that if he had not been fearful of the informant and had not had his appetite for cocaine rekindled, he would not have agreed to participate in the drug transaction which led to his conviction.[2]

It is correct, as appellant argues, that the Superior Court held in *Commonwealth v. Mathews*, 347 Pa.Super. 320, 500 A.2d 853 (1985), that "police involvement in criminal activity may be so outrageous that a prosecution will be barred on due process grounds." *Id.*, 347 Pa.Superior Ct. at 321, 500 A.2d at 854. See: *Hampton v. United States*, 425 U.S. 484, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976); *United States v. Russell*, 411 U.S. 423, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973). See also: *Commonwealth v. Bonace*, 391 Pa. Super. 602, 607, 571 A.2d 1079, 1082 (1990); *Common-*

2. Appellant also asserts that the $50.00 per gram price quoted to him by Agent Byerly constituted an improper inducement in that it was far below the $100.00 per gram market price for cocaine which had been prevalent in the neighborhood at the time. Agent Byerly, however, explained that, although when sold by the gram, cocaine was priced at $100.00, when the drug was sold in bulk quantities the prevailing price in the area was between $50.00 and $75.00 per gram, depending upon the quality of the drug.

*wealth v. Delligatti*, 371 Pa.Super. 315, 321, 538 A.2d 34, 37 (1988). "The question whether government conduct [has been] so outrageous as to constitute a violation of due process is a question of law to be determined by the court, not the jury." *United States v. Engler*, 806 F.2d 425, 430 (3d Cir.1986), *cert. denied*, 481 U.S. 1019, 107 S.Ct. 1900, 95 L.Ed.2d 506 (1987). See also: *United States v. Swiatek*, 819 F.2d 721, 726 (7th Cir.1987), *cert. denied*, 484 U.S. 903, 108 S.Ct. 245, 98 L.Ed.2d 203 (1987); *United States v. Salazar*, 720 F.2d 1482, 1488 (10th Cir.1983), *cert. denied*, 469 U.S. 1110, 105 S.Ct. 789, 83 L.Ed.2d 783 (1985); *United States v. Prairie*, 572 F.2d 1316, 1319 (9th Cir.1978); *United States v. Quinn*, 543 F.2d 640, 648 (8th Cir.1976); *Commonwealth v. Lindenmuth*, 381 Pa.Super. 398, 403, 554 A.2d 62, 64 (1989). Before the conduct of law enforcement officials or government agents will be found to have violated due process, however, it must be shown that police conduct was " 'so grossly shocking and so outrageous as to violate the universal sense of justice.' " *United States v. Ramirez*, 710 F.2d 535, 539 (9th Cir.1983), quoting *United States v. Ryan*, 548 F.2d 782, 789 (9th Cir.1976), *cert. denied*, 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977). See also: *United States v. Ofshe*, 817 F.2d 1508, 1516 (11th Cir.1987), *cert. denied*, 484 U.S. 963, 108 S.Ct. 451, 98 L.Ed.2d 391 (1987); *Owen v. Wainwright*, 806 F.2d 1519, 1521 (11th Cir.1986), *cert. denied*, 481 U.S. 1071, 107 S.Ct. 2466, 95 L.Ed.2d 875 (1987). The establishment of a due process violation "generally requires 'proof of government *overinvolvement* in the charged crime and proof of the defendant's mere passive connection to the government orchestrated and implemented criminal activity.' " *United States v. Duvall*, 846 F.2d 966, 973 (5th Cir.1988), quoting *United States v. Nations*, 764 F.2d 1073, 1077 (5th Cir. 1985). Moreover, for due process to bar a conviction, the government's involvement in the commission of the crime "must be *malum in se* or amount to the engineering and direction of the criminal enterprise from beginning to end." *United States v. Citro*, 842 F.2d 1149, 1153 (9th Cir.1988), *cert. denied*, 488 U.S. 866, 109 S.Ct. 170, 102 L.Ed.2d 140 (1988). See also: *United States v. Williams*, 791 F.2d 1383,

1386 (9th Cir.1986), *cert. denied,* 479 U.S. 869, 107 S.Ct. 233, 93 L.Ed.2d 159 (1986); *United States v. Gonzales,* 539 F.2d 1238, 1239–1240 (9th Cir.1976).

Review of federal decisions reveals that the conduct of the government in conducting criminal investigations will be found to violate due process " 'only in the rarest and most outrageous circumstances.' " *United States v. Arteaga,* 807 F.2d 424, 426 (5th Cir.1986), quoting *United States v. Yater,* 756 F.2d 1058, 1066 (5th Cir.1985), *cert. denied,* 474 U.S. 901, 106 S.Ct. 225, 88 L.Ed.2d 226 (1985). See also: *United States v. Rubio,* 834 F.2d 442, 450 n. 6 (5th Cir. 1987); *United States v. Haimowitz,* 725 F.2d 1561, 1577 (11th Cir.1984), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984). Thus, the Court of Appeals for the Third Circuit has said:

> [A] successful due process defense must be predicated on intolerable government conduct which goes beyond that necessary to sustain an entrapment defense.... We must necessarily exercise scrupulous restraint before we denounce law enforcement conduct as constitutionally unacceptable; the ramifications are wider and more permanent than when only a statutory defense is implicated.

*United States v. Jannotti,* 673 F.2d 578, 607 (3d Cir.1982), *cert. denied,* 457 U.S. 1106, 102 S.Ct. 2906, 73 L.Ed.2d 1315 (1982). See: *Hampton v. United States, supra* 425 U.S. at 495 n. 7, 96 S.Ct. at 1653 n. 7, 48 L.Ed.2d at 122 n. 7 (Powell, J. Concurring) ("Police overinvolvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction."). See also: *United States v. Ward,* 793 F.2d 551, 553–555 (3d Cir.1986); *United States v. Gambino,* 788 F.2d 938, 945 n. 6 (3d Cir.1986), *cert. denied,* 479 U.S. 825, 107 S.Ct. 98, 93 L.Ed.2d 49 (1986); *United States v. Beverly,* 723 F.2d 11 (3d Cir.1983).

It has been held that the mere fact that an investigation has been begun without probable cause or reasonable suspicion does not violate due process. See: *United States v. Biswell,* 700 F.2d 1310, 1314 (10th Cir.1983) ("Any absence of a reasonable basis for initiation of the undercover investi-

gation does not bar the prosecution."); *United States v. Jannotti, supra* at 609 (commencement of investigation without probable cause "does not bar the conviction of those who rise to its bait"); *United States v. Myers,* 635 F.2d 932, 940–941 (2d Cir.1980), *cert. denied,* 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980) (no constitutional requirement of reasonable suspicion before investigation may begin). See also: *United States v. Driscoll,* 852 F.2d 84, 87 (3d Cir.1988). But see: *United States v. Luttrell,* 889 F.2d 806, 812–814 (9th Cir.1989) (government should have some factual basis for suspicion prior to approaching an apparently innocent individual and offering opportunity to engage in criminal activity).

■ The government also does not violate due process merely by employing an undercover or reverse sting operation, or because its agents supply ingredients for commission of a crime or contraband to a defendant. *United States v. Goodwin,* 674 F.Supp. 1211, 1217 (E.D.Va.1987), *aff'd,* 854 F.2d 33 (4th Cir.1988). See also: *United States v. Valona,* 834 F.2d 1334, 1344–1345 (7th Cir.1987) (government's supplying of small sample of cocaine to defendant was typical of preliminary stages of large drug transactions and was not so outrageous as to violate due process); *United States v. Buishas,* 791 F.2d 1310, 1314 (7th Cir.1986) (supplying of small amount of marijuana to defendant was reasonably necessary to complete investigation and did not violate due process); *United States v. Ramirez, supra* at 541 (undercover agents may, under proper circumstances, supply drugs to a suspect to gain his confidence); *United States v. Boffardi,* 684 F.Supp. 1263, 1268 (S.D.N.Y.1988), *aff'd without opinion,* 872 F.2d 1022 (2d Cir.1989) (controlled deliveries of illicit substances by government agents to those who desire them, in the absence of entrapment, does not violate due process); *Commonwealth v. Delligatti, supra* 371 Pa.Super. at 321–323, 538 A.2d at 37–38 (undercover officer's permitting defendant to retain a portion of heroin defendant obtained for officer as a fee did not violate due process as such conduct is normal in drug

transactions and was necessary to avoid jeopardizing ongoing investigation).

The courts have recognized that under some circumstances, it may be necessary or acceptable for undercover agents or government informants to engage in unsavory conduct such as making express or implied threats or offering large sums of money as inducements for suspects to act. This is so because such activities frequently constitute ordinary bargaining tactics in criminal enterprises such as narcotics trafficking and may be necessary to enable the agent or informant to establish or maintain a credible cover. See: *United States v. Emmert*, 829 F.2d 805, 811–812 (9th Cir.1987) (role of government agents involving alleged threats and intimidation of college student, along with offering student a $200,000 finder's fee for securing a supply of cocaine for them, did not violate due process). See also: *Owen v. Wainwright, supra* at 1522 ("government infiltration of criminal activity is a legitimate and permissible means of investigation and frequently requires that the government agent furnish something of value to the criminal"); *United States v. Hodge*, 594 F.2d 1163, 1165–1167 (7th Cir.1979) (due process not violated by government's use of paid informant, who, via contingent fee arrangement with government, was compensated for each individual narcotics transaction he engaged in with members of a specific narcotics dealing organization); *United States v. Reynoso–Ulloa*, 548 F.2d 1329, 1338–1339 (9th Cir.1977), *cert. denied*, 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978) (viewed in context of sordid business of drug trafficking, threat made by government informant did not rise to level of due process violation). Cf. *United States v. Wingo*, 723 F.Supp. 798, 801–802 (N.D.Ga.1989) (course of conduct employed by government, which presented defendant with alternative of cooperating in investigation or facing criminal charges, did not violate due process).

The few appellate decisions in which government conduct has been found to violate due process have generally involved long term police involvement in the establishment

and operation of ongoing criminal enterprises. See: *United States v. Twigg,* 588 F.2d 373 (3d Cir.1978) (due process violation where government agent suggested creation of drug laboratory, supplied necessary equipment and ingredients, as well as building to house lab, and provided all laboratory expertise, without which defendants would not have known how to produce drug); *Greene v. United States,* 454 F.2d 783 (9th Cir.1971) (due process violated where, over a two and one-half year period, government agent contacted defendants after their arrest for bootlegging and offered to supply necessary materials, operator and location for still, supplied sugar at wholesale prices, urged the beginning of production and was the sole customer for still's entire production); *Commonwealth v. Mathews, supra* (due process violated where police supplied defendants with money to purchase chemicals necessary to manufacture methamphetamine and to rent residence in which to set up lab, helped them transport necessary equipment to lab and instructed them step by step in manufacturing process).

In the absence of such pervasive, long term police involvement in a criminal enterprise, the courts have generally refused to find due process violations, even where the government's conduct was unseemly. See and compare: *United States v. Walther,* 867 F.2d 1334, 1338–1339 (11th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 144, 107 L.Ed.2d 103 (1989) (government's conduct in initiating negotiations for sale of drugs and supplying drugs and warehouse as site for sale was not so outrageous as to violate due process); *United States v. Simpson,* 813 F.2d 1462, 1465–1468 (9th Cir.1987), *cert. denied,* 484 U.S. 898, 108 S.Ct. 233, 98 L.Ed.2d 192 (1987) (F.B.I.'s continued use of informant after learning of her sexual involvement with defendant was not so outrageous as to violate due process); *United States v. Arteaga, supra* at 427 (due process not violated by use of informant who formerly was defendant's attorney on commercial matters); *United States v. Fortna,* 796 F.2d 724, 735 (5th Cir.1986), *cert. denied,* 479 U.S. 950,

107 S.Ct. 437, 93 L.Ed.2d 386 (1986) (government's use of mother of defendant's child to obtain evidence against him did not violate due process); *United States v. Mazzella,* 768 F.2d 235, 237–239 (8th Cir.1985), *cert. denied,* 474 U.S. 1006, 106 S.Ct. 528, 88 L.Ed.2d 460 (1985) (DEA's conduct in placing advertisement in magazine offering for sale chemicals commonly used in manufacturing methamphetamine, suggesting that defendant submit a list of desired chemicals for a price quote and shipping the chemicals to him was not so outrageous as to violate due process); *United States v. Tobias,* 662 F.2d 381, 387 (5th Cir.1981), *cert. denied,* 457 U.S. 1108, 102 S.Ct. 2908, 73 L.Ed.2d 1317 (1982) (no due process violation where undercover agent suggested to defendant that he manufacture PCP, supplied him with formula, chemicals and equipment necessary to do so, and continued providing technical advice during manufacturing process); *United States v. Penn,* 647 F.2d 876, 880–882 (9th Cir.1980), *cert. denied,* 449 U.S. 903, 101 S.Ct. 276, 66 L.Ed.2d 134 (1980) (police conduct in offering five dollar bribe to defendant's five year old son to show them where his mother had hidden her supply of heroin was not so outrageous as to constitute violation of due process).

When the teachings of the decided cases are applied to the facts of the instant case, we are persuaded that police conduct used in the investigation and apprehension of appellant was not violative of due process. The government informant had had an extensive past history of narcotics dealings with appellant. It was, therefore, not unreasonable for the informant to identify appellant as a possible target for the Commonwealth's drug investigation. Although appellant said that he had felt threatened by the informant's mention of his past drug debt, there was no evidence that any direct or explicit threats had been made to appellant, and, in fact, appellant's apparent willingness to sell cocaine as a means to repay the debt, as well as make a profit, belied his assertions of fear.

Even if the mention of the debt had been intended and understood as an implicit threat, however, the conduct of

the police could not be said to be outside the normal course of events in drug trafficking. The informant had approached appellant after a hiatus of more than a year, in which the two had had no contact. For the informant to have expressed no concern for the existing debt would have been unrealistic. The fact that it was mentioned did nothing more than afford appellant an opportunity to purchase cocaine. As for Agent Byerly's permitting appellant to sample the cocaine, this too was not outrageous conduct, but was a normal part of a drug transaction. Appellant had agreed to purchase a large quantity of cocaine which had been represented to be of high quality. Therefore, it was not unreasonable for Agent Byerly to expect that appellant would want to sample the cocaine to determine its quality before completing the transaction. Having carefully reviewed all the circumstances surrounding the investigation and arrest of appellant, we perceive no basis for holding that the investigatory techniques employed by the Commonwealth were so outrageous as to violate due process.

█ Appellant also contends that the evidence showed entrapment as a matter of law. The defense of entrapment is defined by statute as follows:

(a) **General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations designed to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) **Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of

evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S. § 313(a) and (b). The statute adopts an objective standard. It focuses on police conduct and tactics rather than upon a defendant's predisposition to commit crime. *Commonwealth v. Weiskerger*, 520 Pa. 305, 554 A.2d 10 (1989); *Commonwealth v. Wright*, 396 Pa.Super. 276, 578 A.2d 513 (1990); *Commonwealth v. Jones*, 242 Pa.Super. 303, 363 A.2d 1281 (1976). "In order to succeed on the defense of entrapment, 'it must be shown that police conduct would have induced an innocent person to commit a crime.'" *Commonwealth v. Wilson*, 381 Pa.Super. 253, 258, 553 A.2d 452, 454 (1989), quoting *Commonwealth v. Stokes*, 264 Pa.Super. 515, 518, 400 A.2d 204, 206 (1979). See also: *Commonwealth v. McGuire*, 339 Pa.Super. 320, 328, 488 A.2d 1144, 1149 (1985) ("Pennsylvania's entrapment statute addresses the concern over 'unconventional' investigatory methods, and the *potentialities* inherent in these overreaching tactics."). However, "[p]olice use of artiface and stratagem to provide a person with an opportunity to commit a criminal act, without improper persuasion or inducement, does not amount to entrapment." *Commonwealth v. Frank*, 357 Pa.Super. 442, 448, 516 A.2d 64, 67 (1986). "Merely affording opportunities or facilities for the commission of a crime by one who already ha[s] the criminal intent to engage in such a crime does not defeat the prosecution." *Commonwealth v. Lee*, 262 Pa.Super. 218, 221, 396 A.2d 724, 725 (1978). See also: *Commonwealth v. Loccisano*, 243 Pa.Super. 522, 366 A.2d 276 (1976).

■ Appellant argues that the Commonwealth's use of implicit threats regarding the debt owed to Dasso and Agent Byerly's allowing him to sample the cocaine was conduct so egregious that it amounted to entrapment as a matter of law. The trial court was unpersuaded by these arguments and rejected appellant's entrapment defense, reasoning as follows:

The evidence presented, including the recordings of the conversations between the defendant and Dasso and

Byerly, reveal, however, that the defendant was an enthusiastic participant in the transaction. When the prior debt was mentioned by Dasso, Benchino immediately began to scheme to obtain a quantity of cocaine. It was the defendant who made various proposals for financing a deal, and who persisted and who ultimately obtained a backer, with the admitted purpose of paying off the debt and realizing a profit for himself and others, while at the same time obtaining cocaine for personal use.

The burden of proving entrapment rests with defendant by a preponderance of the evidence. 18 Pa.C.S.A. § 313(b). Where Commonwealth Agents provide drugs to a defendant, who is then charged with possession with intent to deliver, and the defendant raises entrapment, the Court must scrutenize [sic] the facts carefully because of the risk the Commonwealth may have created the offense. Looking at the facts in this case, it would appear that the defendant had not dealt with Dasso for more than one year, although he had dealt heavily with him before. There is no evidence that the defendant had gone through drug rehabilitation or that he resisted efforts by Commonwealth agents to participate in these transactions. On the contrary, the tape recorded conversations are overwhelming evidence that the defendant enthusiastically seized the opportunity to engage in the transaction and repeatedly provided various ideas to both the narcotics agent and the informant for providing drugs, using strong sell tactics. The defendant intended to resell some of the drug at a profit to pay off the debt he owed Dasso and to profit his supporters and obtain the remainder for self use. The conduct of the Commonwealth was not shown to have crossed the line from mere trickery, or providing a predisposed defendant an opportunity to commit a crime, to the type of excessive zeal which risks inducing a law abiding citizen to become a criminal.

After careful review, we are satisfied that there was sufficient evidence to support the trial court's conclusion

that police conduct in this case was not of a kind likely to induce an innocent person to become involved in a drug transaction.[3] Although appellant claims to have been intimidated and coerced, there is no evidence that any direct threats were made by the Commonwealth's informant; and appellant's own conduct suggested that he was willingly taking advantage of the opportunity provided for him to obtain drugs. Under these circumstances, appellant's defense of entrapment presented an issue of fact which could be accepted or rejected by the trier of the facts. See: *Commonwealth v. Delligatti, supra* (no entrapment as a matter of law where undercover police officer approached defendant and asked him to obtain heroin, and defendant readily accepted officer's proposition without further insistence); *Commonwealth v. Frank, supra* (no entrapment as matter of law where undercover agent posed as patient who desired to control her weight, and, who subsequently told defendant physician that her boyfriend was using medication which doctor had prescribed for her; agent merely provided defendant with opportunity to illegally dispense medication). See also: *Commonwealth v. Danko*, 281 Pa. Super. 97, 421 A.2d 1165 (1980); *Commonwealth v. Stokes, supra; Commonwealth v. Wright*, 235 Pa.Super. 289, 340 A.2d 544 (1975). Compare: *Commonwealth v. Wright*, 396 Pa.Super. 276, 578 A.2d 513 (1990) (entrapment as a matter of law established where police informant cultivated friendship with defendant solely to induce defendant to purchase marijuana on his behalf and defendant purchased the drug merely as a favor to informant without profiting therefrom); *Commonwealth v. Thompson*, 335 Pa.Super. 332, 484 A.2d 159 (1984) (entrapment as a matter of law established where defendant, who was a middle aged, black police officer, was induced to deliver marijuana to young,

---

**3.** The transcripts of the intercepted communications which appellant had with both Dasso, the informant, and Agent Byerly have not been included in the official record as certified to this court on appeal. However, the transcripts have been included in appellant's reproduced record.

blonde undercover state trooper after months of kissing and socializing with her).

Because neither principles of due process nor the entrapment provisions of the Pennsylvania Crimes Code barred appellant's conviction as a matter of law, the judgment of sentence will be affirmed.

Judgment of Sentence affirmed.