636 A.2d 210

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Johnny F. HARRIS, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 1, 1993.

Filed Jan. 10, 1994.

Jack W. Connor, Asst. Public Defender, Uniontown, for appellant.

Richard E. Bower, Asst. Dist. Atty., Connellsville, for Com., appellee.

Before POPOVICH, JOHNSON and CERCONE, JJ.

POPOVICH, Judge:

This is an appeal from the judgment of sentence of the court of Common Pleas of Fayette County, following appellant's conviction on charges of possession of cocaine, possession of cocaine with the intent to deliver and criminal conspiracy. Appellant contends that the lower court erred in failing to instruct the jury with respect to the defense of entrapment. Appellant also contends that the evidence established entrapment as a matter of law, and, thus, he is entitled to arrest of judgment of sentence entered against him. While we do not find that the evidence established entrapment as a matter of law, we do find that the trial court erred in refusing to instruct the jury concerning entrapment.

Initially, we note that entrapment is defined, in pertinent part, as follows:

(a) General rule.—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

    \*   \*   \*   \*   \*   \*

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

(b) Burden of proof.—Except as provided in subsection c of this section, a person prosecuted for an offense shall be acquitted if he proves by a preponderance of the evidence that his conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313.

■ The statute adopts an objective standard which focuses upon police conduct and tactics, rather than upon a defendant's predisposition to commit crime. The pertinent question is whether the police conduct would have induced an innocent individual to commit a crime. However, merely affording opportunity, through police artifice and stratagem, for the commission of a crime by a person who already has the requisite criminal intent is not entrapment. *See, Commonwealth v. Benchino*, 399 Pa.Super. 521, 531–33, 582 A.2d 1067, 1072–1073 (1990); *Commonwealth v. Lebo*, 405 Pa.Super. 316, 592 A.2d 353 (1991), *appeal denied*, 530 Pa. 640, 607 A.2d 251; *Commonwealth v. Wright*, 396 Pa.Super. 276, 578 A.2d 513 (1990), *appeal denied*, 526 Pa. 648, 585 A.2d 468.

Instantly, the only evidence presented by the Commonwealth was that of the undercover officer, Trooper Nickle. He testified that he and his informant met appellant at a gas station after the informant had called appellant. Trooper Nickle further testified that, upon his arrival, appellant stated, "When I got your call and you asked for my code name, Johnny D., I knew that you needed my services. Now what can I help you with?" He stated that, after advising appellant that they wished to purchase cocaine and had $75.00 to spend, appellant said, "I'll take you to my sources and get you a $50.00 bag and a $40.00 bag or whatever the man has. But I'll get the stuff and if you don't like it, it goes back."

During the next six hours, Trooper Nickle and the informant accompanied appellant to various housing projects in Fayette County. While searching for cocaine, Trooper Nickle supplied at least two six-packs of beer which the three men consumed. At one project, appellant rejected some soap offered as cocaine by a black male with a New York accent. Later, Trooper Nickle, his informant and appellant proceeded

to Coach's Corner, a bar, where they met the same person who had previously tried to pass soap powder as cocaine.[1] He indicated that he had found a supply of cocaine, and the group followed the male to a nearby residence. Trooper Nickle and appellant waited in the front seat of the unmarked police car while the New York male went inside the residence. A middle-aged, black woman and the male exited the residence, approached the vehicle, and the woman handed appellant a baggie containing a white substance. Trooper Nickle testified that appellant poked a hole in the baggie, tasted the contents and proclaimed, "This is cocaine." The woman then demanded $60.00 which Trooper Nickle handed to appellant who then handed the cash to the woman. Trooper Nickle left the scene and dropped appellant off at his vehicle. He also testified that he had the informant give appellant $10.00 for his services.

Appellant's and Trooper Nickle's versions of the events of the afternoon in question are similar. However, they differ on some very significant points. Most importantly, appellant denied that the informant called him and that he offered his "services" and to take the men to his "sources." Rather, he asserts he met the officer and the informant when Trooper Nickle approached him in the parking lot of Hunter's Ridge, a housing project.[2] Appellant testified that Trooper Nickle asked appellant if he knew where they could obtain some drugs. Appellant told Trooper Nickle that no drugs were available at Hunter's Ridge. Appellant and the officer began drinking beer which the trooper offered to appellant. At the trooper's suggestion, the three men entered the trooper's vehicle where appellant contends all three men, including Trooper Nickle, consumed a small amount of cocaine supplied by the informant. Trooper Nickle then asked appellant if he knew where they could get some more cocaine. Appellant suggested that they try Lemonwood Acres, another housing

1. In addition, a woman named Eileen Green accompanied the men to Coach's Corner. Eileen Green's residence was where the black male attempted to pass soap powder as cocaine.

2. Appellant asserts he was at Hunter's Ridge to drop a friend off after they had completed their work for the day at a construction site.

project. On the way there, Trooper Nickle provided appellant with money to purchase another six-pack of beer.

At Lemonwood Acres, the men did not see anyone who appeared to be selling drugs. The parties then travelled to Briarwood Acres, where they were equally unsuccessful. Trooper Nickle suggested that they drive through Lemonwood Acres again. Once at Lemonwood Acres, the men went to the apartment of Eileen Green in order for the men to "go to the bathroom." While appellant was returning from the bathroom, he heard Trooper Nickle ask Eileen Green if she knew where they could obtain some cocaine. She responded affirmatively, and Trooper Nickle gave her $60.00. She left to get the drugs and returned with a small packet of white powder which appellant discovered by smell to be soap. The soap powder was refused, and she then went and got the dealer who was the same male with the New York accent who Trooper Nickle described when he testified. Appellant then demanded the return of the $60.00.

After getting the money back, Trooper Nickle, the informant, appellant and Eileen Green went to Coach's Corner bar where the trooper bought appellant a beer and a shot of Jack Daniel's Bourbon. Trooper Nickle also bought another six-pack of beer, and the group left the bar. Once inside the car, they were contacted outside of Coach's Corner by the New York male who said that he now had some cocaine. Despite appellant's protest, Trooper Nickle followed the male to a nearby residence where the informant, while sitting in the front passenger's seat, gave the male $60.00. He took the cash and entered the residence. A short time later, a middle-aged black woman came out and looked around. Then, the male exited the building and gave the cocaine to the informant. Everyone in the car then inhaled a small quantity of the cocaine, and Trooper Nickle took his passengers back to their residences or cars.

Instantly, we find that the trial court erred when it refused to instruct the jury on the defense of entrapment. The question of whether entrapment has occurred is a ques-

tion for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law. *Lebo,* 592 A.2d at 355; *Commonwealth v. Clawson,* 250 Pa.Super. 422, 425–426, 378 A.2d 1008, 1010 (1977). The lower court determined that the evidence pointed to only one conclusion— that there was no entrapment as a matter of law. However, we must disagree with that determination.

The lower court's conclusion that there was not entrapment as a matter of law appears to stem from two separate errors. First, the lower court considered the question of whether to instruct the jury on entrapment by viewing the evidence in the light most favorable to the Commonwealth, i.e., it accepted only the arresting officer's testimony and wholly discounted appellant's recounting of the relevant events. However, it is clear that when deciding whether to instruct on entrapment, the judge must consider the possibility that the jury would credit the testimony of the defendant. *See, Clawson,* 378 A.2d at 1010–1011. In fact, where the defendant presents evidence of entrapment, an entrapment instruction should be given no matter how unreasonable the court may believe the defendant's claims to be. *Commonwealth v. Russell,* 326 Pa.Super. 346, 353 n. 3, 473 A.2d 1383, 1386 n. 3 (1984). Second, the lower court apparently determined that appellant's assertion that he engaged in no illegal activity precluded an entrapment defense. To the contrary, a defendant is not required to admit every element of the crime charged before he may contend that he was entrapped. *Commonwealth v. McGuire,* 339 Pa.Super. 320, 332, 488 A.2d 1144, 1151 (1985).

Presently, it is possible that the jury could have believed enough of appellant's version of the day's events such that the defense of entrapment was viable. Appellant testified that he was approached by the trooper to obtain cocaine. He testified that he told the trooper that he did not know where any could be obtained. Further, he stated that he was given cocaine and alcohol by the officer prior to and during Trooper Nickle's search for drugs. Thus, it is at least arguable that

appellant was induced into helping the officer obtain cocaine by the officer's actions of supplying appellant with drugs and alcohol.

Certainly, a jury could find that the present case is not one where the police merely gave the defendant the opportunity to sell drugs and did not importune the defendant in any manner. *See, Commonwealth v. Stokes,* 264 Pa.Super. 515, 400 A.2d 204 (1979); *Commonwealth v. Wright,* 235 Pa.Super. 289, 340 A.2d 544 (1975); *Commonwealth v. Diliberto,* 399 Pa.Super. 470, 582 A.2d 690 (1990). Rather, accepting appellant's testimony which the jury is free to do, the jury could have found that appellant's conduct was induced by the trooper's distribution of cocaine and alcohol to appellant. We conclude that there was sufficient evidence of inducement introduced through appellant's testimony such that the lower court erred when it concluded as a matter of law that entrapment did not occur. Simply put, the jury should have been permitted to decide the issue of entrapment. *Cf., Clawson, supra* (jury should have been permitted to consider defendant's testimony as it related to the defense of entrapment).[3]

■ While we agree with appellant that he is entitled to a new trial due to the lower court's refusal to instruct upon the defense of entrapment, we do not agree with appellant's assertion that demonstrated entrapment as a matter of law. To prevail as a matter of law, appellant must show that the

3. The recent case of *Benchino,* 582 A.2d 1067, is distinguishable from the present case. Therein, the defendant alleges he was induced to engage in criminal activity, i.e., cocaine distribution, by police conduct. The conduct of which Benchino complained was implicit threats concerning a debt which he owed to the Commonwealth's informant and permitting him to sample cocaine. Despite Benchino's allegations, the record in *Benchino, supra,* is clear; the defendant initiated and arranged a scheme to sell cocaine which would not only pay off his debt but also would provide him with a personal cache of cocaine. Thus, we agreed with the lower court's conclusion that the evidence did not reveal entrapment as a matter of law.

We note that *Benchino, supra,* began with a bench trial, and, thus, there was no need for a jury instruction on entrapment. Instantly, however, it is possible that the facts testified to by appellant, if believed by the jury, could result in a successful entrapment defense. Thus, it was for the jury to decide whether appellant proved entrapment by a preponderance of the evidence. 18 Pa.C.S.A. § 313; *Clawson, supra.*

evidence was so overwhelming that no reasonable jury could fail to find entrapment as a matter of law. *Lebo,* 592 A.2d at 356. Certainly, the evidence presented below does not rise to such a level. Rather, it is entirely conceivable that a jury would not credit any of appellant's testimony. Nevertheless, appellant must be permitted the opportunity to have a jury assess his entrapment defense. Accordingly, we reverse the judgment of sentence and remand for a new trial.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.