J-S16039-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JASON ROBERT KELLEY | : | |
| | : | |
| Appellant | : | No. 1556 MDA 2021 |

Appeal from the PCRA Order Entered October 12, 2021
In the Court of Common Pleas of Adams County
Criminal Division at No(s):  CP-01-CR-0000141-2019

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY COLINS, J.:                    **FILED:  SEPTEMBER 2, 2022**

Jason Robert Kelley appeals from the order denying, following a hearing, his first and timely petition filed pursuant to the Post Conviction Relief Act. ***See*** 42 Pa.C.S.A. §§ 9541-9546. On appeal, Kelley singularly asserts that his trial counsel was ineffective for failing to investigate, both prior to and at trial, the procedures surrounding the Adams County Drug Task Force's (ACDTF) use of a female confidential informant (CI). However, our review of the record leads us to conclude that Kelley's counsel had a reasonable basis to act in the manner that he did. Moreover, Kelley has failed to demonstrate prejudice. As such, we find there is no basis for him to establish that he suffered from ineffective assistance and affirm.

Briefly, the ACDTF, working in tandem with a female CI, became aware

_____

* Retired Senior Judge assigned to the Superior Court.

of an alleged heroin seller by the name of Ira Trivitt. Thereafter, the CI arranged to buy heroin from Trivitt through the communication platform Facebook Messenger. As had been agreed to, the drug buy was facilitated at a Sheetz convenience store/gas station (Sheetz) in New Oxford, Pennsylvania. The transaction was completed using marked currency provided to the CI by the ACDTF. When the meeting between the CI and Trivitt had concluded, the CI gave the ACDTF a substance that was believed to be heroin. Furthermore, the CI indicated to the ACDTF that she knew who Kelley was, as he was Trivitt's drug supplier and present as a passenger in Trivitt's vehicle while the exchange took place.

Approximately two weeks later, after the CI began conversing with Kelley in the same manner as Trivitt, there was another rendezvous established for the purpose of purchasing heroin. The CI met with Kelley at the exact same Sheetz as she had with Trivitt and, too, used marked currency to consummate the trade. Subsequent testing would confirm that the CI had acquired illicit/controlled substances from Kelley (as well as Trivitt).

After his trial concluded, a jury found Kelley guilty of three counts of delivering a controlled substance and one count of criminal conspiracy to do the same.[1] For these offenses, Kelley received a total of five to ten years of incarceration. Following sentencing, Kelley filed a notice of appeal, and this Court affirmed his judgment of sentence.

---

[1] **See** 35 P.S. § 780-113(a)(30); 18 Pa.C.S.A. § 903(a)(1), respectively.

Six months after our decision, Kelley, acting *pro se*, filed the present and timely PCRA petition.[2] Subsequently, counsel was appointed to represent him in his post-conviction proceedings. Ultimately, after the lower court granted a complete hearing to delve into Kelley's assertions, it dismissed his petition. After Kelley filed a notice of appeal from this decision, the relevant parties complied with their obligations under Pennsylvania Rule of Appellate Procedure 1925. Accordingly, this matter is ripe for review.

On appeal, Kelley avers that trial counsel was ineffective for failing to investigate the procedures employed by the ACDTF regarding the use of female CIs. **See** Appellant's Brief, at 4. Relatedly, counsel was ineffective for failing to cross examine the Commonwealth's witnesses about these procedures. **See id**.

We utilize well-settled precepts to evaluate an order that dismisses a PCRA petition:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any ground if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Where the petitioner raises questions of law,

---

[2] Although Kelley initially raised five issues in his petition, he has elected to only argue one of those claims in his brief before this Court, with three of the issues having already been dismissed by the lower court for lack of merit. **See** Trial Court Opinion, 10/12/21, at 3.

our standard of review is *de novo* and our scope of review plenary.
***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

As Kelley's sole contention is that his trial counsel provided him with ineffective assistance, he must demonstrate:

> (1) that the underlying claim has arguable merit; (2) that no reasonable basis existed for counsel's actions or failure to act; and (3) that the petitioner suffered prejudice as a result of counsel's error. To prove that counsel's chosen strategy lacked a reasonable basis, a petitioner must prove that an alternative not chosen offered a potential for success substantially greater than the course actually pursued. Regarding the prejudice prong, a petitioner must demonstrate that there is a reasonable probability that the outcome of the proceedings would have been different but for counsel's action or inaction. Counsel is presumed to be effective; accordingly, to succeed on a claim of ineffectiveness[,] the petitioner must advance sufficient evidence to overcome this presumption.

***Commonwealth v. Johnson***, 139 A.3d 1257, 1272 (Pa. 2016) (citations and quotation marks omitted). However, we note that a failure to satisfy even one of the three ineffective assistance prongs results in a rejection of the entire claim. ***See Commonwealth v. Martin***, 5 A.3d 177, 183 (Pa. 2010).

Distilled down, Kelley avers that his trial counsel's failure to explore the ACDTF's policies and procedures, either in their oral or written form, that governed its use of CIs did not allow the jury to "hear any information about the 'behind-the-scenes' of the sting operation" that led to his arrest. Appellant's Brief, at 8. However, Kelley concedes that only the most outrageous circumstances could warrant a finding that the government's

- 4 -

conduct in a criminal investigation violated due process. *See id*., at 10-11, *citing*, *inter alia*, **Commonwealth v. Nelson**, 666 A.2d 714 (Pa. Super. 1995). Moreover, "[i]in the absence of … pervasive, long term police involvement in a criminal enterprise, … courts have generally refused to find due process violations, even where the government's conduct was unseemly." **Commonwealth v. Benchino**, 582 A.2d 1067, 1071 (Pa. Super. 1990); *see also id*., at 1070 (indicating that there is no violation of due process merely because the government is the genesis of an undercover operation).

Kelley faults trial counsel for not engaging in a vigorous cross-examination of the way ACDTF performs CI-based undercover operations. Kelley highlights Detective Anthony Gilberto's testimony, wherein the Detective stated that, in providing an overview of the first drug deal, he unilaterally searched the CI prior to the transaction with Trivitt, rode with the CI to the Sheetz, and provided the CI with the marked currency. *See* N.T., 10/9/19, at 34-35. Despite this testimony, "[t]here was no indication … at the time of the trial that any other member of the [ACDTF] observed any interaction that took place with the CI at any time prior to or immediately after the controlled buy." Appellant's Brief, at 13. Implicitly, then, counsel should have explored why there was only one ACDTF member present for the pre- and post-transaction CI search as well as the handoff of marked dollar bills. Despite Kelley's supposition, the Detective remarked at trial that ACDTF does not have any type of on-point written protocol or procedure. *See* N.T.,

- 5 -

10/9/19, at 72. At least as it pertained to CI searches, while the Detective indicated that he had received training when dealing with searches, the Detective made clear that there were no printed materials in existence mandating that searches had to be performed in a certain way. *See id*.

To the extent that it is true that the ACDTF does not have any formal policies for interactions that involve the use of CIs, Kelley believes that this unguided conduct "is so outrageous as to constitute a violation of due process." Appellant's Brief, at 14. At the PCRA hearing, trial counsel indicated that it was "basically impossible to obtain [ACDTF protocols] because those are internal documents that aren't always provided. [Counsel] would make an effort, but … doubt[ed] that [he] would be able to obtain those documents." PCRA Hearing, 9/21/21, at 28. Counsel later stated that he "couldn't obtain [the documents]." *Id*., at 30. Counsel wanted to "bring out on cross-examination what are [the] general policies … and were the policies in fact followed where if you were dealing with a female CI … was there a female officer available [for] the search[.]" *Id*. However, counsel then remarked that having the policies would not have made any difference because of what was obtained at trial through testimony. *See id*.

The lower court found that Kelley's counsel did, in fact, conduct a reasonable, yet unfruitful, investigation into the ACDTF's procedures. *See* Trial Court Opinion, 10/12/21, at 9. In the alternative, the court determined that counsel's failure to explore ACDTF's procedures to the degree Kelley now

suggests counsel should have done did not demonstrably prejudice him.

The Commonwealth concedes that the ACDTF "did not utilize any protocols or procedures for searches of female [CIs] because they did not have any specific procedures delineated for [that category of individuals]." Appellee's Brief, at 9. However, there were multiple ACDTF officers present when, *inter alia*, the drug deal between Kelley and the CI occurred. More importantly, though, the Commonwealth adamantly stresses that there is no known legal requirement or mandate establishing that a drug task force must use written policies when it utilizes CIs. **See id**., at 10.

To the extent that Kelley suggests that there should be written procedures dealing with both CIs generally and those that are specifically female, we agree that it would be prudent for the ACDTF to adopt written guidelines. Specifically, it would likely be in ACDTF's best interest to incorporate language that addresses a situation such as this: a male officer being the sole individual who engages a female CI pre- and post-transaction. However, Kelley has not demonstrated, as the Commonwealth indicates, that the government *must* have a specifically enumerated written plan in order for its use of CIs to be legally viable. Moreover, as Kelley is attacking his former counsel premised on an ineffective assistance claim, based on the record as it exists, it is unclear what more trial counsel could have done here. If there was no written policy, there was nothing that counsel could have obtained. Therefore, it was not unreasonable for counsel to proceed in the manner that

he did.

Counsel unequivocally stated, at the PCRA hearing, that he could not obtain the complained-of procedures in written form. At trial, bolstering the idea that it was impossible for counsel to acquire the very thing Kelley now seeks, the Detective expressly stated that there is no written policy governing searches of CIs. It was trial counsel's questioning that brought about this admission. In addition, the Detective provided a complete overview of what his role was in searching the CI and furnishing her with marked currency.

Other than vague insinuations that the Detective or the female CI could have possibly engaged in some sort of chicanery, given that they were the only two individuals present for both the searches of the CI and transfer of marked money from the Detective to the CI, Kelley has not demonstrated, through clear authority, that his trial counsel engaged in unreasonable behavior. Stated differently, assuming that no written policies exist, Kelley does not identify, with any level of specificity, other areas about which counsel should have questioned the Detective on cross-examination.

In summary, when juxtaposed against the ACDTF's lack of written policies and the cross-examination that did occur, we are compelled to conclude that both counsel's actions and inactions fell within the bounds of being reasonable. Accordingly, because this element of his ineffective assistance claim fails, the entire basis for his appeal necessarily fails, too.

In the alternative, Kelley provides no clear reason for this Court to find

that his trial counsel's actions or inactions have prejudiced him. Kelley generally asserts that counsel's "lack of exploration on these issues at trial severely prejudiced [him] and very likely could have affected the jury's decision in deciding the outcome of [his] case." Appellant's Brief, at 20. However, there is little development of this ineffective assistance prong beyond that bald statement.

As stated, *supra*, trial counsel believed that obtaining a physical copy of the protocols used by the ACDTF, to the extent that they exist, would not have made any difference in any aspect of the trial proceedings. Moreover, counsel indicated that physical or tangible knowledge of those procedures was not necessary to defend the case. **See** PCRA Hearing, 9/21/21, at 30. The court found counsel to be credible when he made this statement, and we see no cogent basis, either in the record or in law, to refute counsel's conclusion.

As Kelley has failed to demonstrate that his trial counsel provided him with ineffective assistance, we affirm the lower court's order dismissing his PCRA petition.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 09/02/2022