# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kedecia D. Manna d/b/a 9th and Lloyd Inspections | : | CASES CONSOLIDATED |
| | : | |
| | : | |
| v. | : | Nos. 785, 786 C.D. 2022 |
| | : | Submitted: July 5, 2024 |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Motor Vehicles, | : | |
| Appellant | : | |

**BEFORE:**  **HONORABLE RENÉE COHN JUBELIRER,** President Judge
**HONORABLE ELLEN CEISLER,** Judge
**HONORABLE MARY HANNAH LEAVITT,** Senior Judge

<u>**OPINION NOT REPORTED**</u>

**MEMORANDUM OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**          **FILED:  October 22, 2024**

In these consolidated appeals,[1] the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Motor Vehicles (Department or PennDOT) appeals from the Orders of the Court of Common Pleas of Delaware County (trial court), docketed June 22, 2022, that sustained the appeals of Kedecia D. Manna (Manna), d/b/a 9th and Lloyd Inspections (Station) from the Department's suspensions of Station's Certificate of Appointment as an Official Safety Station (Safety Certificate) and Certificate of Appointment as an Official Emission Inspection Station (Emissions Certificate) (together, Certificates) and rescinded the suspensions.  On appeal, the Department argues the trial court erred and/or abused

---

[1] This Court *sua sponte* consolidated these appeals by order dated July 17, 2023.

its discretion in finding that the Department did not meet its burden of proving that Manna violated and/or failed to comply with the Vehicle Code[2] (Code) and Department Regulations (Regulations). Upon review, we affirm.

## I. BACKGROUND

Manna operates the Station at 1033 W. 9th Street, Chester, Pennsylvania. Manna rents the building housing the Station, and a competing inspection station is located in the same building. As stated in this Court's September 27, 2023 Memorandum Opinion and Order[3] denying the Department's request to reinstate its automatic supersedeas pending appeal, Manna rents the building housing the Station from her father and/or stepmother. (9/27/23 Memo. Op. & Order at 3.) Manna's brother and his girlfriend, Kayla Lebowski (Lebowski), operate the competing inspection station. (*Id.* at 4.) As reflected in the testimony below, the relationship between the competing inspection stations and their owners is not a cordial one.

The Department contracts with Parsons Corporation (Parsons) to conduct investigative and administrative audits of inspection stations. (*Id.*) Thomas Bishop is a Quality Assurance Manager with Parsons (QAO Bishop).[4] Gregory Neely is a Quality Assurance Officer with Parsons (QAO Neely).

---

[2] 75 Pa.C.S. §§ 101-9805.

[3] This Court's September 27, 2023 Memorandum Opinion and Order reflects there are numerous appeals involving Manna and the Department pending in this Court: the instant ones at 785 and 786 C.D. 2022 (consolidated), and others at 516 and 517 C.D. 2022 (consolidated), 993 and 994 C.D. 2022 (consolidated), 1057 and 1058 C.D. 2022 (consolidated), 1059-1062 C.D. 2022 (consolidated), and 230 C.D. 2023. These appeals reflect a total of 13 separate orders of suspension, voidance, or non-reappointment of the Station's Certificates issued by the Department between May 3, 2019, and March 21, 2022. (9/27/23 Memo. Op. & Order at 4-19.)

[4] The trial court refers to Bishop as a Quality Assurance Officer or QAO Bishop, and we will do the same.

2

On November 5, 2021, the Department hand-delivered to the Station an Order of Suspension of the Emissions Certificate and an Order of Suspension of the Safety Certificate (Orders).[5] The Orders resulted from violations allegedly occurring between October 18 and November 2, 2021. The Order suspending the Emissions Certificate indicates that the Station continued to conduct inspections without the required insurance (that had been cancelled October 18, 2021[6]); five emissions stickers were not securely stored (they were in a Tupperware® container); emissions inspection records were either incomplete or not present; and the Station failed to inform the Department that an inspector was no longer employed at the Station. This Order further indicated that QAO Neely visited the premises on November 4, 2021, and it was closed during regularly scheduled business hours. The suspension was for eight months consecutive to any other suspensions and went into effect November 5, 2021.

The Order suspending the Safety Certificate did so for four months based on a failure to notify the Department of a change in ownership, location or other changes affecting an official inspection station; four months for improperly assigning a certificate of inspection; and three years for improper recordkeeping. This Order also issued a warning for improper security of certificate of inspection. The complained-of conduct included performing about 127 safety inspections without

---

[5] The Order suspending the Emissions Certificate and Audit Report referenced therein are found in the Reproduced Record at, respectively, pages 340a to 341a and 343a to 344a. The Order suspending the Safety Certificate and Audit Report referenced therein are found in the Reproduced Record at, respectively, pages 360a to 361a and 363a to 364a.

[6] The Department issued a separate notice on November 4, 2021, indicating that the Certificates were voided due to the cancellation of the Station's insurance, and additional suspensions related thereto were imposed. Manna appealed those suspensions, which were sustained by the trial court, and this determination was upheld by this Court in *Manna v. Department of Transportation, Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 993 & 994 C.D. 2022, filed Oct. 7, 2024).

3

the required insurance; failing to provide the MV-431 book for review; claiming that several inspection stickers were stolen; and failing to notify the Department that an inspector was no longer employed by the Station. In addition, QAO Neely visited the Station on November 4 and found it closed. The safety inspection suspension was consecutive to any other suspensions, and the Order indicated the suspension commenced on November 5, 2021.

## II.     TRIAL COURT PROCEEDINGS AND DECISION

Manna appealed both Orders[7] and requested supersedeas, which the trial court granted. The trial court held a *de novo* hearing, at which Manna, QAO Neely, and QAO Bishop testified.[8]

Manna testified to receiving both Orders by email from Pennsylvania State Police Trooper Christopher Tustin (Trooper Tustin) and not being provided a hearing prior to the suspensions. Manna admitted to performing inspections between October 18 (the date that the Station's insurance was cancelled) and November 4, 2021 (the date that the Station obtained new insurance), but explained the insurance had been paid for October, and it was unknown that the insurance was cancelled until early November, when Trooper Tustin informed her. Manna immediately obtained a new insurance policy. Manna testified to never receiving a cancellation notice from the insurer, explaining that Lebowski decided what mail to pass on to Manna. Manna explained that Lebowski or one of her employees removed and destroyed the Station's mailbox. Manna stated that Lebowski boarded up Manna's

---

[7] The appeal related to the Emissions Certificate suspension was given trial court docket number cv-2021-9485 and docket number 785 C.D. 2022 in this Court. The appeal related to the Safety Certificate suspension was given trial court docket number cv-2021-9487 and docket number 786 C.D. 2022 in this Court.

[8] A copy of the transcript from the hearing relevant to these appeals is found at pages 257a through 337a of the Reproduced Record.

4

lobby window and so the mailperson delivers all the mail to Lebowski. Manna suggested that Lebowski contacted the Department, or at least Parsons, to provide information that Lebowski could have only learned by going through Manna's mail (such as cancellation of the insurance policy) and that Lebowski did not deliver all the Station's mail. Manna stated that after the first time Lebowski removed the Station's mailbox, Manna chained a mailbox to the wall, and it too was destroyed or removed.

Manna explained not informing the Department of the October 2021 eviction because the landlord continues, monthly, to evict Manna, and each time Manna has successfully defended against the eviction. Manna did not enter the Station after the October 2021 eviction for fear of being arrested. As to not informing the Department that one of the Station's certificated employees left, Manna testified that the Department learned of the employee's departure during an earlier court proceeding.

Manna explained that the Station's MV-431 book and stickers were stolen around March 25, 2021, when the landlord illegally entered the Station. QAO Neely advised that Manna could start a new MV-431 book beginning with inspections performed upon returning to the Station in October 2021. When Manna returned to the Station, Manna again found the Station's office in disarray. Manna had a second MV-431 book stolen when Manna was displaced from the building in October 2021. Manna performed about 100 inspections personally with no support staff, and Manna was organizing the work orders at home to record the information in another MV-431 book. According to Manna, at least one employee left due to job uncertainty given the ongoing battles with Lebowski. Manna acknowledged that the Station was not open during regular business hours during the October 2021 eviction period, but

explained this was due to being fearful of being arrested if Manna entered the building.

QAO Neely explained that QAO Bishop instructed him to conduct an audit on November 2, 2021, and that Trooper Tustin was with him. He verified his inspection report, which indicated the records were either not present or completed; Manna reported stolen stickers after an employee left the safe open; Manna had filed police reports for both instances where materials were stolen from the Station; and Manna advised him that the work orders were at Manna's residence. He observed the stickers in the Tupperware® container. Manna's analyzer was not connected to the internet initially but worked after being connected. His reports accurately reflect what he observed that day. QAO Neely stated that he was sent to the Station because of a report of the eviction and that the Station was no longer in business. In past inspections, he has never verified that the Station has an insurance policy, and he had never heard of a station's maintenance of an insurance policy being verified during an inspection. QAO Neely testified that he did not fabricate any of the violations he reported. QAO Neely offered no testimony about going to the Station on November 4, 2021, and finding it closed during normal business hours.

Manna called QAO Bishop. Upon questioning, he stated that he sent QAO Neely to conduct the audit because he received a telephone call from Lebowski that Manna was evicted from the building and was no longer in business. He remembered his 2018 audit involving the "mismatched" number but does not remember if he reviewed Manna's work orders, the MV-431, or insurance coverage at that time. (Trial Ct. June 16, 2022 Findings (June 16, 2022 Findings), Findings

of Fact (FOF) ¶¶ 14-15.[9])  He claimed to have no personal vendetta against Manna but acknowledged that at his first meeting with her he had asked whether Manna was related to Ernest Manna (Manna's father).  QAO Bishop stated that when he gets "tips" from Manna and Lebowski's station, he makes an "informed" decision of how to handle the situation.  (*Id.* ¶¶ 18-19.)

QAO Bishop stated that he met Manna's brother, Ernest Manna V, one time, when he issued the certificate of appointment to Lebowksi's station in 2020.  QAO Bishop's testified, conflictingly, that he had reported that the Station and Lebowski's business have common access but also that he had no recollection of the conditions as they existed when he performed Lebowski's certificate of appointment inspection. He denied knowing who called Manna's insurance company and denied that he was part of any conspiracy against Manna.  QAO Bishop, however, acknowledged that Lebowski called him about the eviction.  QAO Bishop admitted to advising Manna on October 28, 2021, that he would inform Manna if QAO Neely was sent to the Station to confirm that Manna was back in the Station but did not do so resulting in QAO Neely and Trooper Tustin appearing on November 2, 2021, unannounced. (FOF ¶ 154; Reproduced Record (R.R.) at 329a.)

Following the hearing, the trial court sustained Manna's appeals and rescinded the suspensions.  The trial court thereafter, on June 16, 2022, issued two sets of nearly identical Findings of Fact and conclusions of law.  (R.R. at 390a-439a.) Therein, the trial court found Manna credible and QAO Bishop and QAO Neely not

---

[9] The trial court issued nearly identical Findings of Fact for the two appeals.  Both are attached to the Department's brief and in the Reproduced Record.  The Findings of Fact cited are found in the trial court's findings relating to the suspension of the Emissions Certificate, which begin at page 390a of the Reproduced Record, but these findings were also made in the appeal of the Safety Certificate suspension.

credible. The trial court concluded that the Regulation at 65 Pa. Code § 177.651[10] required notice and an opportunity to be heard prior to a suspension, and no such hearing was provided here in violation of Manna's due process rights. The trial court also found procedural and substantive due process violations in, respectively, the Department's failure to identify what provisions of the Code or Regulations Manna allegedly had violated in either the Orders or attached Audit Reports, and the outrageous and shocking conduct of QAO Bishop. (FOF ¶¶ 107-08, 110-12, 133-35.) As to QAO Bishop's conduct, the trial court found that

> QAO Bishop and [] Lebowski . . . systematically orchestrated Manna receiving the violations from the November 2, 2021 Emissions Audit which began when [] Lebowski notified QAO Bishop as to the Station's October 2021 unlawful eviction by Tetyana Manna[, Manna's stepmother].
>
> [] QAO Bishop knew [] Lebowski and Ernest Manna, V, the co-owners of the neighboring station, and their familial relationship with Manna.
>
> [] QAO Bishop knew Manna's father, Ernest Manna IV[, and] [] Lebowski informed QAO Bishop about the October 2021 unlawful eviction which led to the investigative audits performed by QAO Neely on October 20, 202[1,] and November 2, 202[1].
> . . . .
> [] [D]espite informing Manna in the October 28, 2021[,] email that he would inform [Manna] when QAO Neely would return to do the audit, he failed to do so resulting in QAO Neely and Trooper Tustin returning to the Station on November 2, 2021[,] unannounced. . . .
>
> [] [C]ontrary to 67 Pa. Code § 175.21(e), QAO Bishop improperly issued a Certificate of Appointment to the neighboring station to the neighboring station's benefit and to Manna's detriment.

---

[10] This regulation provides that "[p]rior to the immediate suspension of any official emission inspection station, certificate of appointment, emission inspector certification or certified repair technician, the Department shall, within 3 days, provide written notice of the alleged violation and the opportunity to be heard." 67 Pa. Code § 177.651.

[] But for the outrageous conduct of QAO Bishop, Manna would not have been audited on November 2, 202[1,] and received violations from this audit.

(*Id.* ¶¶ 149, 151-52, 154-56.)

According to the trial court, "QAO Bishop, a governmental agent of PennDOT, engaged in conduct that was so grossly shocking and so outrageous as to violate the universal sense of justice" and, therefore, denied Manna substantive due process and any suspensions relating to those alleged violations were barred. (*Id.* ¶¶ 134-57 (citing, e.g., *Commonwealth v. Mance*, 652 A.2d 299, 303 (Pa. 1995); *Commonwealth v. Benchino*, 582 A.2d 1067, 1069 (Pa. Super. 1990); *Commonwealth v. Mathews*, 500 A.2d 853, 854 (Pa. Super. 1985)).) The trial court therefore sustained Manna's appeals and rescinded the suspensions.

The Department appealed both orders and filed, as directed, Concise Statements of Errors Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure (Rule) 1925(b), Pa.R.A.P. 1925(b) (Statements). Therein, the Department argued the trial court erred or abused its discretion in finding that the Department did not meet its burden of proving that Manna violated the Code or the Regulations such that the suspension of the Certificates was warranted under Section 4724(a) of the Code, 75 Pa.C.S. § 4724(a),[11] and/or 67 Pa. Code §§ 175.51(a),

---

[11] Section 4724(a) provides:

The [D]epartment shall supervise and inspect official inspection stations and may suspend the certificate of appointment issued to a station or may impose a monetary penalty or may issue a warning against the station which it finds is not properly equipped or conducted or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the [D]epartment. A schedule of all penalties, points and suspension may be established by the [D]epartment by publishing a notice in the Pennsylvania Bulletin until the regulations governing these penalties are promulgated by the [D]epartment. The [D]epartment shall maintain a list of all stations holding certificates of appointment and of those whose

**(Footnote continued on next page…)**

177.602(a), because QAO Neely's testimony supported the violations, as did Manna's own testimony. (R.R. at 465a-66a, 468a-69a.)

The trial court issued a single opinion pursuant to Rule 1925(a) explaining its rationale for sustaining Manna's appeals and rescinding the suspensions (1925(a) Opinion).[12] After restating the procedural and factual history, including the testimony of QAO Bishop, QAO Neely, and Manna, and its credibility determinations, the trial court explained why it committed no error of law or abuse of discretion in granting Manna relief, repeating its reasoning from its June 16, 2022 Findings. According to the trial court, it sustained Manna's appeals for numerous reasons, including the outrageous and shocking conduct of QAO Bishop resulting in a violation of Manna's substantive due process rights, and the denial of procedural due process by not holding a hearing before suspending the Certificates and not identifying the specific Code section or Regulation that Manna allegedly violated in the Orders or Audit Reports, as the provisions cited related to the penalties for violations, not substantive provisions. This left the trial court to speculate as to what provisions Manna violated, which the trial court found impermissible. The trial court noted that the Department had not challenged all of the trial court's reasons for sustaining Manna's appeals in its Statements and, therefore, had waived any such challenge for appellate review. (1925(a) Opinion (Op.) at 15-18, 21.) The trial court

_____

certificates of appointment have been suspended. Any suspended certificate of appointment and all unused certificates of inspection shall be returned immediately to the [D]epartment.

75 Pa.C.S. § 4724(a).

[12] A copy of the trial court's 1925(a) Opinion is found beginning on page 471a of the Reproduced Record. It appears that part of the trial court's 1925(a) Opinion filed by the trial court may inadvertently include analysis associated with one of Manna's other appeals, which also involved due process violations similar to those found in the present matter.

also set forth other reasons, mainly evidentiary, as to why the Department failed to meet its burden of proof.[13]

## III. THE PARTIES' ARGUMENTS

The Department reiterates the arguments it made in its Statements. Specifically, the Department argues the credible testimony of QAO Neely, as well as Manna's own testimony, support its conclusions that Manna violated the Regulations or the Code and that the suspensions of the Certificates were properly imposed. In this regard, the Department cites as support Section 4724(a) of the Code and 67 Pa. Code §§ 175.51(a)(ii), (v), (vii) (identifying, respectively, the length of time a suspension can be imposed for improper recordkeeping, improperly assigning inspection certificates, and failing to notify the Department of certain changes to a safety inspection station), 177.602(a)(vii), (xii), and (xxi) (same for an emissions inspection station). It also points to Manna's testimony that inspections were performed while the Station's insurance was cancelled to support that alleged violation. The Department points out that holding the Certificates are a privilege, not a right pursuant to *Commonwealth v. W. J. Harris and Son*, 170 A.2d 591 (Pa. 1961), and, therefore, can be suspended by the Department under circumstances such as these.

In response, Manna relies on the trial court's rationale from its June 16, 2022 Findings and 1925(a) Opinion, including the violation of her due process rights by QAO Bishop's outrageous and shocking conduct without which these suspensions

---

[13] The Department's appeals resulted in an automatic supersedeas under Pennsylvania Rule of Appellate Procedure 1736, Pa.R.A.P. 1736. Manna petitioned the trial court to vacate the automatic supersedeas, which the trial court granted. Before this Court, the Department sought to reinstate the supersedeas, which was denied by the September 27, 2023 Memorandum Opinion and Order.

would not have occurred, the failure to provide Manna a hearing as required by the Regulations, and the deficiencies of the Orders, to assert the Department's appellate arguments are without merit and the trial court's decisions should be affirmed. (Manna's Brief at 15-18, 21-23, 25-29.) Manna asserts that the Department did not include challenges to the trial court's reasoning on these grounds in its Statements and, therefore, any challenge to those reasons is waived. (*Id.* at 18-19.) Manna also observes that credibility determinations are for the trial court, thereby raising a question about the Department's reliance on QAO Neely's testimony, which the trial court did not credit.

## IV. DISCUSSION

The Court's "review in an inspection certificate suspension case is limited to determining whether the trial court committed an error of law or whether the trial court's findings are supported by substantial evidence." *McCarthy v. Dep't of Transp.*, 7 A.3d 346, 350 (Pa. Cmwlth. 2010). "Substantial evidence is [defined as] relevant evidence that a reasonable mind, without weighing the evidence or substituting its judgment for that of the fact finder, might accept as adequate to support the conclusion reached." *Snyder v. Dep't of Transp., Bureau of Motor Vehicles*, 970 A.2d 523, 528 (Pa. Cmwlth. 2009) (citation omitted). If the record evidence "is adequate to support the finding found by the trial court, as fact finder, [] [the Court is] precluded from overturning th[e] finding and must affirm." *Dep't of Transp., Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873, 875 (Pa. 1989). The Court must review the record "evidence in a light most favorable to . . . the prevailing party in the trial court." *Sillah v. Dep't of Transp.* (Pa. Cmwlth., No. 1311

12

C.D. 2016, filed Jan. 16, 2018), slip op. at 10 n.15[14] (citing *McDonald v. Dep't of Transp., Bureau of Driver Licensing*, 708 A.2d 154, 156 (Pa. Cmwlth. 1998)). "Witness credibility [] [lies] solely within the province of the trial court." *Id.* Evidentiary weight determinations are likewise "solely within the province of the trial court." *Castagna v. Dep't of Transp., Bureau of Motor Vehicles*, 831 A.2d 156, 160 n.4 (Pa. Cmwlth. 2003). "In cases involving alleged violations of the Code and the [R]egulations interpreting the same, [the Department] has the burden of proving such violations by a preponderance of the evidence." *Firestone Tire & Serv. Ctr., O.I.S. #798 v. Dep't of Transp.*, 871 A.2d 863, 867 (Pa. Cmwlth. 2005).

The trial court provided multiple reasons for sustaining Manna's appeals and rescinding the suspensions of the Station's Certificates. One of those reasons is that the Orders did not identify what specific Code provision or Regulation Manna's conduct allegedly violated. As we held in *Manna v. Department of Transportation, Bureau of Motor Vehicles* (Pa. Cmwlth., Nos. 516 & 517 C.D. 2022, filed September 20, 2024), slip op. at 14, due process requires citation to the statutory or regulatory provisions that were allegedly violated.

The Order suspending the Emissions Certificate cited only Section 4724 of the Code, which outlines the Department's authority to suspend inspection station certificates if violations are found, and 67 Pa. Code § 177.602(a), which relates to the penalty for specific violations of the Regulations, rather than any substantive provision of the Code or Regulations. (R.R. at 340a-41a.) The Audit Report incorporated into this Order likewise contains no reference to a substantive provision that Manna allegedly violated. (*Id.* at 343a-44a.) The Order suspending the Safety

---

[14] This unreported panel decision is cited for its persuasive, rather than binding, value pursuant to Pennsylvania Rule of Appellate Procedure 126(b), Pa.R.A.P. 126(b), and Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

Certificate similarly cites only Section 4724 and the penalty provision at 67 Pa. Code § 175.51(a), rather than any substantive provision. (*Id.* at 360a-61a, 363a-64a.)

The Department does not, in its appellate brief, challenge the trial court's reasoning in this regard. Instead, it simply reiterates the alleged violations and cites QAO Neely's testimony as to his investigation. The Department continues to cite the **penalty** provisions, 67 Pa. Code §§ 175.51(a), and 177.602(a), and Section 4724 of the Code, not any substantive Regulation or Code provision, as the bases for Manna's alleged violations. Finding no error or abuse of discretion in the trial court's analysis, this reason supports the trial court sustaining Manna's appeals and rescinding the suspensions of the Certificates.

The trial court also concluded that Manna's due process rights were violated because the Department failed to provide Manna an opportunity to be heard prior to the imposition of the immediate suspension in accordance with its Regulation. The Regulation at 67 Pa. Code § 177.651 states: "**Prior to the immediate suspension** of any official emission inspection station, [or] certificate of appointment, . . . , the Department **shall**, **within 3 days**, **provide written notice of the alleged violation and the opportunity to be heard**." *Id.* (emphasis added). Here, the Orders, dated November 5, 2021, imposed **immediate** suspensions **effective on that date**, (R.R. at 340a-41a, 360a-61a), and the Department never provided Manna an opportunity to be heard "prior to the immediate suspension" of the Certificates. 67 Pa. Code § 177.651. The Department offers no argument as to why the trial court's reasoning is legally erroneous, and we discern none. Thus, this reason also supports the trial

14

court sustaining Manna's appeals and rescinding the suspensions of the Certificates.[15]

## V. CONCLUSION

For the foregoing reasons, we affirm the trial court's orders sustaining Manna's appeals and rescinding the Department's suspensions of the Certificates.

_____
**RENÉE COHN JUBELIRER,** President Judge

---

[15] Based on our disposition, the Court does not address the remaining reasons the trial court proffered for sustaining Manna's appeals and rescinding the suspensions of the Certificates, including the trial court's conclusion that Manna's substantive due process rights were violated by QAO Bishop's "grossly shocking" and "outrageous" conduct, (June 16, 2022 Findings ¶ 157), a conclusion not challenged in the Department's Statements or appellate brief.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kedecia D. Manna d/b/a 9th and    :   CASES CONSOLIDATED
Lloyd Inspections                  :
                                  :
             v.              :   Nos. 785, 786 C.D. 2022
                                    :
Commonwealth of Pennsylvania,    :
Department of Transportation,     :
Bureau of Motor Vehicles,        :
               Appellant    :

# O R D E R

    **NOW**, October 22, 2024, the Orders of the Court of Common Pleas of Delaware County, entered in the above-captioned matters, are hereby **AFFIRMED**.

_____
                                 **RENÉE COHN JUBELIRER,** President Judge