J-S46041-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JESSICA S. THORPE | : | |
| | : | |
| Appellant | : | No. 1491 WDA 2023 |

Appeal from the Judgment of Sentence Entered July 17, 2023
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0000910-2022


BEFORE: LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY KING, J.:           **FILED: AUGUST 26, 2025**

Appellant, Jessica S. Thorpe, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following her jury trial convictions for persons not to possess firearms and possession of methamphetamine.[1]  We affirm.

The relevant facts and procedural history of this case are as follows. Wes Biricocchi, an Attorney General's Office investigator, received a tip from a confidential informant ("CI") that the CI knew a friend who was attempting to sell an AK-47 and another unknown rifle.[2]  During the course of Agent Biricocchi's investigation, he learned that the prospective seller was Appellant,

---

[1] 18 Pa.C.S.A. § 6105 and 35 P.S. § 780-113(a)(16), respectively.

[2] Although the CI initially mentioned two guns, the subsequent investigation and arrest at issue in this appeal involved only the AK-47.  (**See** N.T. Trial, 4/20/23, at 23, 42, 45-48).

who was using Facebook Messenger to facilitate the sale. Although Appellant initially asked for $400.00 in exchange for the firearm, when the CI offered to provide two bricks of heroin instead, Appellant agreed to the deal. Subsequently, police discovered that Appellant had a 2016 conviction for reckless burning,[3] which rendered her ineligible to possess a firearm.

On the day of the arranged buy, Appellant, a passenger in the vehicle, arrived at the meeting spot with three other individuals. Surveilling agents observed a man exit the back seat of the car, retrieve a rifle bag from the trunk, and re-enter the vehicle. When agents surrounded the car, they observed Appellant seated in the back of the car with a man, and a black rifle bag laying across their laps. The occupants of the car were removed and arrested. A search incident to arrest also revealed 2.1 grams of methamphetamine in Appellant's purse. Appellant informed Agent Biricocchi that she was selling a friend's gun, which the friend wanted to trade for drugs.

The case proceeded to a jury trial on April 19, 2023. At trial, Appellant requested a jury instruction regarding an entrapment defense, but the court denied Appellant's request. At the conclusion of trial, the jury convicted Appellant of persons not to possess firearms and possession of methamphetamine. On July 17, 2023, the court sentenced Appellant to 3½ to 7 years of incarceration and one year of reporting probation.

On July 26, 2023, Appellant filed a timely post-sentence motion

---

[3] *See* 18 Pa.C.S.A. § 3301(d).

requesting a judgment of acquittal or a new trial. She argued that the conviction for persons not to possess firearms could not stand because it violated Appellant's Second Amendment rights under *New York State Rifle & Pistol Association, Inc. v. Bruen*, 597 U.S. 1, 142 S.Ct. 2111, 213 L.Ed.2d 387 (2022) (rejecting use of means-end scrutiny in Second Amendment context and instead holding that, when Second Amendment's plain text covers individual's conduct, Constitution presumptively protects that conduct, and government must then justify regulation by demonstrating that it is consistent with Nation's historical tradition of firearm regulation) and *Range v. Att'y Gen. United States of Am.*, 69 F.4th 96 (3d Cir. 2023), *judgment vacated by* *Garland v. Range*, ___ U.S. ___, 144 S.Ct. 2706, 219 L.Ed.2d 1313 (2024) (holding that Nation's historical tradition of firearms regulation did not support depriving putative purchaser, convicted of Pennsylvania state felony-equivalent crime of making false statement to obtain food stamps, of his Second Amendment rights).[4] Appellant contended that Section 6105 was unconstitutional both on its face and as applied to her.

Additionally, Appellant challenged the weight of the evidence, contending that the Commonwealth had failed to: (1) prove a motive for the crime; (2) provide forensic evidence linking Appellant to the firearm; (3) establish possession of the firearm; and (4) provide any corroborating witnesses to the crime. According to Appellant, the witnesses at trial were

---

[4] We discuss *Bruen* and its progeny in more detail in our analysis of Appellant's fourth issue on appeal.

J-S46041-24

solely law enforcement, and had unfairly focused on Appellant simply because she had a 2016 conviction for reckless burning of an uninhabited structure.

On December 1, 2023, the court issued an order explaining that the post-sentence motion had been denied by operation of law on November 23, 2023. On December 21, 2023, Appellant timely filed a notice of appeal. On January 4, 2024, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On January 25, 2024, Appellant timely complied.

On appeal, Appellant raises the following issues for our review:

I. Whether the evidence presented was insufficient to sustain the … guilty verdict of person not to possess a firearm when the Commonwealth failed to establish the element of possession beyond a reasonable doubt?

II. Whether the guilty verdict of person not to possess a firearm was against the weight of the evidence?

III. Whether the trial court erred in failing to instruct the jury on the entrapment defense when [Appellant] was entitled to this recognized defense which had been requested, which had been made an issue in the case, and sufficient evidence existed for the jury to find in her favor?

IV. Whether the trial court erred in failing to grant the motion in arrest of judgment/motion for judgment of acquittal as the person not to possess statute is unconstitutional on its face and as applied to [Appellant]?

(Appellant's Brief at 4).

In Appellant's first issue, she argues that the Commonwealth failed to establish the element of possession beyond a reasonable doubt. According to Appellant, she had neither the power to control nor the intent to control the

- 4 -

firearm. Appellant points to various facts to support her contentions: she did not own the vehicle and was not driving the vehicle; she was a passenger in the rear side of the vehicle; the rifle was in a black rifle bag in the trunk of the car; and the bag was removed from the car by Mark McKendrick and brought into the rear of the vehicle by him. Further, Appellant argues that the Facebook messages were never authenticated, and the gun was not submitted for fingerprint testing. Appellant suggests that an individual does not have the power or intent to control an item simply because it was placed upon her legs in the rear of a four-door sedan seconds before her arrest. Appellant concludes the Commonwealth presented insufficient evidence to sustain her conviction for persons not to possess firearms, and this Court must grant relief. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that

the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code provides, in relevant part:

**§ 6105. Persons not to possess, use, manufacture, control, sell, or transfer firearms**

**(a) Offense defined.—**

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

\*     \*     \*

**(b) Enumerated offenses.—**The following offenses shall apply to subsection (a):

\*     \*     \*

Section 3301 (relating to arson and related offenses).

18 Pa.C.S.A. § 6105(a)(1), (b).

"When contraband is not found on the defendant's person, the

- 6 -

Commonwealth must establish constructive possession[.]" ***Commonwealth v. Jones***, 874 A.2d 108, 121 (Pa.Super. 2005) (quoting ***Commonwealth v. Haskins***, 677 A.2d 328, 330 (Pa.Super. 2005)). "Constructive possession is the ability to exercise conscious control or dominion over the illegal [item] and the intent to exercise that control." ***Id.*** "The intent to exercise conscious dominion can be inferred from the totality of the circumstances." ***Id.*** "Constructive possession may be found in one or more actors where the item in issue is in an area of joint control and equal access." ***Commonwealth v. Valette***, 531 Pa. 384, 388, 613 A.2d 548, 550 (1992).

> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

***Commonwealth v. Parish***, 191 A.3d 31, 36-37 (Pa.Super. 2018), *appeal denied*, 651 Pa. 10, 202 A.3d 42 (2019) (internal citations and quotation marks omitted).

Instantly, the trial court addressed Appellant's sufficiency challenge as follows:

> In this matter, it was obvious that [Appellant] had both the intent and power to control the firearm. During the consensual post-arrest audio-recorded interview, the following exchange took place between [Appellant] and Agent Wesley Biricocchi:
>
> > **[APPELLANT]**: I had a friend's gun that they … wanted to trade drugs for and they … asked me to bring it down here to do that.

**AGENT BIRICOCCHI**: You knew why you were coming here to Westmoreland County from Saint Mary's and that was to trade a gun for drugs?

**[APPELLANT]**: Yes[.]

Furthermore, Agent Biricocchi testified that [Appellant] held the rifle bag containing the firearm when he arrested her.

(Trial Court Opinion, 2/14/24, at 3) (citing Commonwealth's Ex. 7, Audio Interview of Appellant, 2/22/22).[5]

Upon review, we agree with the trial court that, viewing the evidence admitted at trial in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to establish Appellant's possession of the firearm. Specifically, Appellant's admission to police that she "had" the gun and had brought it to Westmoreland County to trade for drugs (on behalf of her friend), as well as the fact that she was holding the rifle bag containing the firearm at the time of her arrest, established facts from which the jury could reasonably infer that she exercised dominion and control over the firearm. **See Parish, supra**. Further, Appellant's prior conviction under Section 3301 rendered her ineligible to possess firearms. **See** 18 Pa.C.S.A. § 6105(b). On this record, the Commonwealth presented sufficient evidence to sustain Appellant's conviction. **See Sebolka, supra**.

In Appellant's second issue, she argues that the verdict was contrary to the weight of the evidence. Specifically, Appellant insists that the evidence

___

[5] The audio recording of Appellant's post-arrest interview is contained within the certified record. This Court has had the opportunity to review it, and we confirm that the trial court's recitation of the conversation is accurate.

presented by the Commonwealth was tenuous, vague, and uncertain. Appellant characterizes the investigation as arising from a confidential source on Facebook, but she complains that the Facebook messages were not preserved (and therefore not properly authenticated), and the content of said messages were only introduced via the testimony of Agent Biricocchi. Appellant further attacks the police investigation, noting various alleged failures such as: police did not document the owner of the vehicle; the rifle was never submitted for fingerprint testing; police did not provide audio or video surveillance of the incident; and the investigation report does not identify the other three occupants of the car besides Appellant. As a result of these failings, Appellant concludes that the verdict was contrary to the weight of the evidence. We disagree.

Our standard of review regarding challenges to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the ... verdict if it is so contrary to the evidence as to shock one's sense of justice.

> ***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

Instantly, the trial court addressed Appellant's weight claim as follows:

> The verdict in this case is not so contrary to the evidence that it shocks the [c]ourt's sense of justice. Based on [Appellant's] recorded confession that she drove to Westmoreland County with the intent to trade the AK-47 rifle for two (2) bricks of heroin, and Agent Biricocchi's observation of the rifle lying across [Appellant's] lap in the vehicle, the jury appropriately found [Appellant] possessed the AK-47 rifle. As she is a felon who is not to possess a firearm, her possession of the rifle warranted a conviction under § 6105(a) of the Crimes Code.

(Trial Court Opinion, 12/4/23, at 27). The record supports the court's analysis. The jury as factfinder was free to believe all, part, or none of the evidence presented. *See Champney, supra*. On this record, we cannot say that the trial court abused its discretion in denying Appellant's weight claim. *See id.*

In Appellant's third issue, she asserts that the court erred in denying her request for a jury instruction on the defense of entrapment because the course of conduct of police officers established that she was entrapped. Appellant raises similar points as in her issues above: complaints that police used a confidential source; failure to authenticate and preserve Facebook messaging posts; failure to memorialize statements of the other three occupants in the vehicle; failure to perform forensic testing of the gun; and failure to note in any report ownership of the vehicle. Appellant states baldly

- 10 -

that confidential sources are by their very nature used to induce a target to commit a criminal act. Appellant concludes that the trial court erred by denying her request for an entrapment defense jury instruction, and this Court must grant her a new trial. We disagree.

> In reviewing a challenge to the trial court's refusal to give a specific jury instruction, it is the function of this Court to determine whether the record supports the trial court's decision. In examining the propriety of the instructions a trial court presents to the a jury, our scope of review is to determine whether the trial court committed a clear abuse of discretion or an error of law which controlled the outcome of the case. A jury charge will be deemed erroneous only if the charge as a whole is inadequate, not clear or has a tendency to mislead or confuse, rather than clarify, a material issue. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error. Consequently, the trial court has wide discretion in fashioning jury instructions. The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal.

*Commonwealth v. Sandusky*, 77 A.3d 663, 667 (Pa.Super. 2013) (citation omitted).

Further:

> The defense of entrapment, as defined in the Commonwealth of Pennsylvania, is based upon an objective standard intended to deter overreaching on the part of law enforcement and those individuals acting in cooperation with law enforcement, such as confidential informants. However, the government may only be held accountable for the acts of a third party if those acts were taken at the request or direction of law enforcement.

*Commonwealth v. Willis*, 990 A.2d 773, 775-76 (Pa.Super. 2010), *appeal*

*denied*, 607 Pa. 704, 4 A.3d 1054 (2010) (citation omitted).

The Crimes Code defines the defense of entrapment as follows:

**§ 313. Entrapment**

**(a) General rule.**—A public law enforcement official or a person acting in cooperation with such an official perpetrates an entrapment if for the purpose of obtaining evidence of the commission of an offense, he induces or encourages another person to engage in conduct constituting such offense by either:

(1) making knowingly false representations to induce the belief that such conduct is not prohibited; or

(2) employing methods of persuasion or inducement which create a substantial risk that such an offense will be committed by persons other than those who are ready to commit it.

**(b) Burden of proof.**—Except as provided in subsection (c) of this section, a person prosecuted for an offense shall be acquitted if [s]he proves by a preponderance of evidence that [her] conduct occurred in response to an entrapment.

18 Pa.C.S.A. § 313.

"The question of whether entrapment has occurred is a question for the jury, unless the evidence points to only one conclusion, in which case it may be decided as a matter of law." ***Commonwealth v. Harris***, 636 A.2d 210, 227-28 (Pa.Super. 1994) (citation omitted). However, where the operative facts supporting the defense of entrapment are disputed, the defense is properly submitted to the jury. ***See Commonwealth v. Mance***, 619 A.2d 1378, 1381 (Pa.Super. 1993) (holding that where there is conflicting testimony on subject of entrapment, conflict is for jury to resolve). "Operative

facts" are "those that are necessary for appellant to prove by a preponderance of the evidence that [s]he was entrapped." ***Commonwealth v. Marion***, 981 A.2d 230, 239 (Pa.Super. 2009). "Under the objective test for entrapment, these would be facts that go to the course of conduct of a government officer or agent that would fall below standards to which common feelings respond, for the proper use of government power." ***Id.***

Instantly, the court explained at trial:

> If it were the Commonwealth's burden to disprove [entrapment], then certainly I would read [the instruction on entrapment], but given the fact that it's [Appellant's] burden, I just don't think there is anything out there [o]n which the jury could base the idea that the government implanted in [Appellant's] mind the disposition to commit a criminal act. It could have happened, but it's just all speculative, and the jury would really have to reach impermissibly in my opinion in order to come to that conclusion. I want to leave it in because … I hate to take things out of the jury's hands, but I just—or out of their purview I should say, but I just don't think there's anything there. I think it's all speculative so I'm not going to read that instruction on entrapment.

(N.T. Trial, 4/21/23, at 3).

In its opinion, the court elaborated:

> [I]t is clear that [Appellant] did not meet her burden at trial[.] … Agent Biricocchi testified that his investigation began when he spoke to a confidential source who advised him that a person was trying to sell two (2) firearms—one an AK-47. Through further investigation, he learned that the prospective seller was [Appellant], and she was utilizing Facebook Messenger as a platform. [Agent] Biricocchi's confidential source offered to exchange [Appellant's] gun for two (2) bricks of heroin. The police ran [Appellant's] name through its computer system and learned that she had a 2016 conviction for [reckless burning], making her a person

not eligible to possess a firearm. The authorities then set up surveillance at a rap studio where the transaction was to take place. Thereafter…the police witnessed the start of the transaction and made the arrest.

On cross examination, [Agent] Biricocchi testified that the investigation of [Appellant] began on the date of the arrest—February 22, 2022. He advised that the contact between the confidential source and [Appellant] on Facebook Messenger was made in his presence. He did not recall how many messages went back and forth between the source and [Appellant], and he did not provide any hard copies of the messages. [Agent] Biricocchi clarified that the original offer from [Appellant] was to sell the gun for $400, but through negotiation, the medium of exchange was switched to two (2) bricks of heroin. [Agent] Biricocchi stated that the confidential source set up the deal on his or her own, and the conversation between that person and [Appellant] took approximately an hour. It was the confidential source's idea to choose the rap studio as the purported deal location.

[Appellant] did not come close to meeting [her] burden of proving that she was entrapped. She chose not to testify or call any witnesses in an effort to demonstrate entrapment. On cross examination, neither [Agent] Biricocchi nor any other witness testified that either the police or the confidential source represented to [Appellant] that it was permissible for a felon to possess or sell a semi-automatic weapon. Furthermore, there was no evidence that they induced an innocent person to commit a crime. [Appellant's] criminal liability was apparent as soon as the police learned that the purported seller of a gun on social media was a felon. Neither the police nor the confidential source had any contact with her whatsoever when she advertised her offer. It was obvious at that point that if she did not possess the firearm at the moment she made the advertisement, she was willing to possess it in order to sell it. Plainly, she was "ready to commit" a crime before the authorities ever became involved.

(Trial Court Opinion, 12/4/23, at 5-7) (internal citations omitted).

We agree with the trial court that Appellant has failed to prove her

entitlement to an entrapment instruction. Appellant does not dispute Agent Biricocchi's testimony regarding the content of the Facebook messages as inaccurate or untrue. Rather, she repeats her earlier arguments regarding the sufficiency of the evidence and baldly implies that the use of confidential sources automatically results in entrapment. As the trial court correctly noted, there was no evidence to support Appellant's contention that she had been induced to commit the crime. Accordingly, the trial court did not abuse its discretion in denying Appellant's requested jury instruction, and she was not prejudiced by this refusal. *See Sandusky, supra*; *Harris, supra*.

In Appellant's final issue, she argues that Section 6105 is unconstitutional on its face and as applied to her, relying on *Bruen, supra*.[6] In *Bruen*, our United States Supreme Court articulated a two-part test that controls our review of Appellant's issue:

> [T]he standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen, supra* at 24, 142 S.Ct. at 2129-30. Regarding the first prong of the test, the *Bruen* Court found that the petitioners in that case were ordinary,

---

[6] We note that Appellant addresses only her federal Second Amendment rights, and not her rights under the Pennsylvania State Constitution. We limit our examination of her issue accordingly.

law-abiding citizens, whose proposed course of conduct (concealing handguns in public), was presumptively protected by the Second Amendment. *Id.* at 32-33, 142 S.Ct. at 2134-35. Regarding the second prong of the analysis, the Court went on to state that courts must "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26, 142 S.Ct. at 2131. Nevertheless, the Court noted that "analogical reasoning requires only that the government identify a well-established and representative historical analogue, not a historical twin. So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* at 30, 142 S.Ct. at 2133.

Appellant also acknowledges this Court's decision in *Commonwealth v. McIntyre*, 314 A.3d 828 (Pa.Super. 2024), *appeal granted*, No. 268 MAL 2024 (Pa. filed November 26, 2024) ("*McIntyre I*"), wherein this Court held that Section 6105, in light of *Bruen*, does not violate the Second Amendment.

Nevertheless, on June 21, 2024, during the pendency of this appeal, the United States Supreme Court decided *United States v. Rahimi*, 602 U.S. 680, 144 S.Ct. 1889, 219 L.Ed.2d 351 (2024), which considered a Second Amendment challenge to a federal statute forbidding possession of a firearm to a person subject to a domestic violence order. *See id.* at 684, 144 S.Ct. at 1894. The statute in question included the requirement that the court make a finding that the person represents a credible threat to the physical safety of

the person's intimate partner.[7] *See Rahimi, supra* at 690, 144 S.Ct. at 1896-97. Applying the *Bruen* framework, the *Rahimi* Court held that since its founding, this Nation's firearm laws have included regulations to stop individuals who threaten physical harm to others from misusing firearms and, as applied to the facts of the case, the challenged regulation fit within that tradition. *See id.* at 694-702, 144 S.Ct. at 1898-1902. Accordingly, the Court held that the statute was neither unconstitutional on its face, nor as applied to Rahimi himself. *See id.*

Thereafter, on November 26, 2024, the Pennsylvania Supreme Court granted allowance of appeal in *McIntyre I*, vacated this Court's decision that had affirmed the trial court's judgment of sentence, and remanded the matter to this Court to apply *Rahimi*. Therefore, this Court's decision in *McIntyre I*, to which both parties cite on appeal, is no longer controlling authority.

This Court has recently summarized our decisions following *Rahimi* as follows:

> Since *Rahimi*, this Court has addressed constitutional challenges to § 6105 arising in a variety of contexts. In *Commonwealth v. Jenkins*, 328 A.3d 1076 (Pa.Super. 2024), *appeal granted*, 18 MAL 2025, 2025 WL 1874050 (Pa. July 8, 2025), Jenkins attacked the constitutionality of that statute when his underlying prohibition stemmed from his being a fugitive from justice. He argued that "the Commonwealth failed to meet its burden to demonstrate that the statute is consistent with this nation's historical tradition of firearm regulation." *Id.* at 1088 (citation omitted). In affirming, we recounted the applicable law

---

[7] *See* 18 U.S.C.A. § 922(g)(8).

from *Bruen* and *Rahimi*. This Court did not make an express determination as to whether Jenkins fell within "the people" identified in the Second Amendment, instead going to the second part of the *Bruen* test, stating that Jenkins was similarly situated to the defendant in *Rahimi*. *Id.* at 1088 ("Pursuant to *Rahimi*, we must determine if the disarmament of fugitives under [§] 6105 is consistent with principles that underpin our tradition of firearm regulations").

The *Jenkins* panel then examined historic surety laws and laws disarming vagrants to find that § 6105's prohibition is analogous to those:

> When the Supreme Court issued its June 2024 opinion in *Rahimi*, it emphasized that the key consideration is whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. The lengthy historical analysis above reveals that disarming people similarly situated to [Jenkins] is not only part of this nation's history of firearm regulation, but also of Pennsylvania's history.

*Id.* at 1096 (citation omitted).

In [*Commonwealth v. Farmer*, 329 A.3d 449 (Pa.Super. 2024), *appeal granted*, 44 MAL 2025, 2025 WL 1873446 (Pa. July 8, 2025)], a case decided several weeks after *Jenkins*, the appellant presented an attack to § 6105 when his prior conviction prohibiting him from possessing a firearm was for felony robbery. … The panel first concluded that Farmer fell within "the people" identified in the Second Amendment, and thus the first part of the *Bruen* test was satisfied. *Farmer*, 329 A.3d at 455. However, we found that Farmer's challenge did not survive examination of the second component, concerning whether the regulation is consistent with the Nation's historical tradition of firearm regulation:

> The Supreme Court's *Rahimi* opinion, particularly its "how" and "why" analysis with regard to "going armed" laws, provides an avenue for upholding felon firearms bans such as that of § 6105, at least temporarily. The common law "going armed" laws

- 18 -

prohibited the use of dangerous weapons to terrify people and imposed forfeiture of weaponry as a punishment. Plainly, the experience of being robbed at gunpoint and/or the threat of being robbed at gunpoint by one convicted of having done so in the past is sufficient to cause terror. And § 6105 is strikingly similar to [18 U.S.C.] § 922(g)(8), at issue in *Rahimi*, in both how—prohibition of firearm possession—and why—Appellant, based on his criminal history, poses a threat of violence—it restricts Appellant's Second Amendment right. And this case, as distinct from both *Rahimi* and [*Range, supra*], involves a criminal conviction for a felony that involved the use of a firearm. Given the United States Supreme Court's treatment of the "going armed" laws in its *Rahimi* opinion, we can safely conclude that our nation does indeed have a history and tradition of disarming people like Appellant.

*Id.* at 458 (cleaned up). Accordingly, we rejected Farmer's as-applied challenge to § 6105.

Finally, we recently revisited the matter of whether a felon is entitled to protection pursuant to the Second Amendment in *Commonwealth v. McIntyre*, 333 A.3d 417 (Pa.Super. 2025) [("*McIntyre II*"), upon remand from the Supreme Court]. In that case, this Court rejected McIntyre's facial challenge to § 6105 after finding that his as-applied challenge was waived for failure to raise it in the trial court. *Id.* at 430-31. McIntyre had previously been convicted of burglary, robbery, and aggravated assault. In contravention to *Farmer*, the panel held that McIntyre did **not** satisfy the first part of the *Bruen* test by establishing that he is one of "the people" covered by the Second Amendment, explaining as follows:

Based on all the above, we agree that *Bruen* does not stand for the principle that convicted violent offenders such as McIntyre are "the people" who have a right to possess arms under the Second Amendment. *Bruen* in no way said that felons are protected under the Second Amendment, nor can its decision, with its hyper focus on "law-abiding" citizens, be read as

providing the necessary support for such a determination.

Instead, **Bruen** reinforced [**District of Columbia v. Heller**, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008)], which unequivocally stated that its holding that individuals had a right to bear arms under the Second Amendment did not in any way call into doubt the government's ability to prohibit felons from possessing firearms. Therefore, under **Heller**, we find that the plain text of the Second Amendment does not cover McIntyre and his possession of a firearm as a convicted offender. This conclusion negates any need to examine **Bruen**'s second question, *i.e.* whether [§] 6105's prohibition against convicted felons and certain other convicted offenders from possessing firearms is consistent with this Nation's history of firearm regulation.

*Id.* at 430 (cleaned up).

**Commonwealth v. Randolph**, 2025 PA Super 167, 2025 WL 2166516 at *5-6 (Pa.Super. filed July 31, 2025) (internal footnote omitted).

In **Randolph**, the appellant had a prior conviction for possession of a controlled substance with the intent to deliver ("PWID") and was later convicted of persons not to possess firearms. The appellant challenged the constitutionality of Section 6105 in his post-sentence motion and on appeal. This Court examined the relevant precedent to determine whether the statute was unconstitutional on its face or as applied to the appellant.

Regarding the appellant's "as applied" challenge, this Court applied the first prong of the **Bruen** analysis, and considered whether the appellant was one of "the people" protected by the plain text of the Second Amendment. This Court acknowledged the apparent conflict between **Farmer** and

*McIntyre II* on this point and ultimately concluded that the appellant satisfied the first component of the *Bruen* test. *See Randolph, supra* at *7.[8]

Therefore, this Court proceeded to the second step of the *Bruen* analysis. Based upon the relevant jurisprudence, this Court determined that the prohibition imposed on the appellant by Section 6105 was consistent with the Nation's historical tradition of firearm regulation, where the trial court specifically found that the appellant's prior convictions for PWID placed him in the category of persons who would pose a credible threat to others. *See Randolph, supra* at *9 (explaining that drug trafficking is inherently violent offense). This Court explained that "America's history of prohibiting certain classes of people from having firearms, particularly those that could pose a higher risk of danger to society, provides a 'historical analogue' required by *Bruen* for § 6105, even if it is not a 'historical twin.'" *Id.* Notably, this Court expressly rejected the appellant's arguments that PWID is not a "crime of violence," nothing that "crime of violence" is not the phrase utilized by the U.S. Supreme Court throughout its recent case law. *Id.* at *10. Rather, "the *Rahimi* Court highlighted that firearm prohibitions may apply to those that pose [a] 'credible threat' to the safety of another. Drug traffickers fit that mold."

---

[8] This Court explained that "while we are generally bound by both cases, we must follow *Farmer*'s conclusion as to the first step of *Bruen*, as it was decided earlier in time and because the *McIntyre* [*II*] panel was unable to overrule that portion of the decision." *Randolph, supra*.

Turning to the facial constitutional challenge, the ***Randolph*** Court observed that "a facial attack is the most difficult challenge to mount successfully, because it requires a defendant to establish that **no set of circumstances exists under which the Act would be valid**." ***Randolph, supra*** at *10 (emphasis in original). Because this Court had already decided that Section 6105 was constitutional as applied to the appellant, the appellant's facial challenge necessarily failed because he could not demonstrate that "no set of circumstances exists under which the statute would be valid." ***See id.***

Instantly, our review of the record shows that Appellant entered a negotiated guilty plea in 2016 to one count of reckless burning or exploding. (***See*** N.T. Trial, 4/20/23, at 38) (***See also*** Docket No. CP-24-CR-0000006-2016). The trial court observed that Appellant had a "significant history of violent crime," most notably "a felony reckless burning conviction under the Pennsylvania arson statute." (***See*** Trial Court Opinion, 12/4/23, at 17). The court observed that "[f]elony arson has historically been considered to be a violent and dangerous crime." (***See id.***)

Reckless burning or exploding is defined in the Crimes Code as follows:

**§ 3301. Arson and related offenses**

\* \* \*

**(d) Reckless burning or exploding.—**A person commits a felony of the third degree if [she] intentionally starts a fire or causes an explosion, or if [she] aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether

on [her] own property or on that of another, and thereby recklessly:

> (1) places an uninhabited building or unoccupied structure of another in danger of damage or destruction.
>
> (2) places any personal property of another having a value that exceeds $5,000 or if the property is an automobile, airplane, motorcycle, motorboat or other motor-propelled vehicle in danger of damage or destruction.

18 Pa.C.S.A. § 3301(d).

Turning first to Appellant's "as applied" challenge, under the first step of the *Bruen* analysis, our case law confirms that Appellant is one of the people protected by the Second Amendment. *See Randolph, supra*; *Farmer, supra*.

As to the second step of the *Bruen* analysis, Appellant's prior conviction for reckless burning necessitates the inference that she presented a credible threat to the physical safety of others, as setting a fire to even an unoccupied structure risks that such a fire could go undetected and easily spread. America's history of prohibiting certain classes of people from having firearms, particularly those who could pose a higher risk of danger to society, fits within the "historical analogue" required by *Bruen*, even if it is not a "historical twin." *See Bruen, supra*; *Randolph, supra*. Therefore, we conclude that Section 6105 is constitutional as applied to Appellant. *See Rahimi, supra*; *Randolph, supra*. Because Section 6105 is constitutional as applied to Appellant, she is unable to establish that "no set of circumstances exists under which the [statute] would be valid." *See id.* Consequently, her facial

challenge to the statute necessarily fails. ***Id.*** Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/26/2025